## HEAD-BERRY CO. v. BANNISTER.

No. 5284. Opinion Filed December 7, 1915.

(153 Pac. 669.)

1. **BROKERS—Exclusive Agency.** A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite time, unless he is granted one or the other in express terms; and in the absence of such grant the owner may, independent of the broker, sell either through his own efforts or those of another.

2. **SAME—Agency Contract—Construction.** The contract between a real estate broker and the owner, providing for the sale of lots at auction, examined, and **held** not to deprive the owner of the right to sell independent of the broker.

(Syllabus by Dudley, C.)

*Error from County Court, Tulsa County;*
*Conn Linn, Judge.*

Action by F. B. Bannister against the Head-Berry Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Dillard & Blake,* for plaintiff in error.

*Haskell B. Talley,* for defendant in error.

Opinion by DUDLEY, C. This is an action by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover an alleged commission for the sale of certain lots at auction under a written contract dated January 13, 1912, and damages for the breach thereof. The parties will be referred to as they were in the trial court. The petition contains two counts—one for the alleged commission for the sale of said lots under said contract, and the other for damages for the breach thereof. There was judgment for the plaintiff for $85, from which the defendant has appealed.

On January 13, 1912, the plaintiff and defendant entered into a written contract by the terms of which the defendant employed the plaintiff to sell the unsold lots in the townsite of Jenks, Okla., at auction on January 27, 1912, for a commission of 20 per cent. of the gross sales. The defendant was to prepare said town site for sale at its own expense under the direction of the plaintiff. The plaintiff was to advertise said town site in such manner as he saw fit, and all expenses incurred in advertising the same, including the railroad transportation and hotel bills of the plaintiff and one extra man, were to be paid by the defendant, provided the total expense was not to exceed $700. The prices of the various lots and the terms upon which they were to be sold are not stated in the contract; but the defendant was given the right to fix the price of each lot, and the terms upon which the same was sold.

Following the execution of said contract, the plaintiff advertised said town site, the expense of which was paid by the defendant. After the execution of said contract, and prior to January 27, 1912, the defendant, independent of the plaintiff, sold 50 of said lots, 40 to one party and 10 to another. This fact was known by the plaintiff on the date of the auction sale, but, notwithstanding this fact, these same lots were put up and auctioned off by the plaintiff, and bid in by the parties who had previously purchased them from the defendant, and for the same price. These lots were resold in order to boost the sale of other lots and encourage prospective buyers. The plaintiff actually sold at public auction on the day of sale 19 lots, for which he received the commission due him under the terms of said contract. He was also paid his expenses in connection with said auction sale. He claims, however, that said contract is an exclusive sale contract, and that, therefore,

he is entitled to his commission for the sale of said 50 lots. The trial court instructed the jury that said contract was one of exclusive sale, and that the defendant had no right to sell any of said lots between the date of the execution of said contracts and the date of the auction sale. The defendant insists that the court erred in so instructing the jury. The correctness of this instruction is the only question presented here.

The contract is lengthy, and it would serve no useful purpose to set it out in full. There is nothing in the contract that deprives the defendant of the right, independent of the plaintiff, to sell any of said lots prior to the day of auction. The trial court erred in instructing the jury to the contrary. A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite term, unless he is granted one or the other in unequivocal terms; and in the absence of such grant, the owner may, independent of the broker, sell either through his own efforts or those of another. *Roberts v. Markham,* 26 Okla. 387, 109 Pac. 127; 4 R. C. L., secs. 12, 259; *Cronin v. American Sureties Co.,* 163 Ala. 533, 50 South. 915, 136 Am. St. Rep. 88; *Dole v. Sherwood,* 41 Minn. 535, 43 N. W. 569, 5 L. R. A. 720, 16 Am. St. Rep. 731; *Hammond v. Mau,* 69 Wash. 204, 124 Pac. 377, 40 L. R. A. (N. S.) 1142, and note; *Hennings v. Parsons,* 108 Va. 1, 61 S. E. 866, 15 Ann. Cas. 765; *Quist v. Goodfellow,* 99 Minn. 509, 110 N. W. 65, 8 L. R. A. (N. S.) 153, 9 Ann. Cas. 431, and note; *Smith v. Preiss et al.,* 117 Minn. 392, 136 N. W. 7, Ann. Cas. 1913D, 820, and note; *Darrow v. Harlow,* 21 Wis. 302, 94 Am. Dec. 541; *Ingold v. Symonds,* 125 Iowa, 82, 99 N. W. 713; *Golden Gate Co. v. Farmers' Union,* 55 Cal. 606.

The plaintiff concedes the correctness of the rule just announced, when applied to the broker in an ordinary real

estate transaction, but insists that a different rule obtains as to an auction sale of lots. This might be true under some state of facts, but it is not true of the instant case. The contract contains the agreement of the parties, and we are unable to see wherein it deprives the owner of the right to sell his property independent of the broker. Of course, if the sale of these 50 lots had been brought about through the efforts of the plaintiff, then defendant would be liable for the commission, even though it consummated the deal itself; but no such contention is made here.

The cause should be reversed and remanded.

By the Court: It is so ordered.