## MATHEWS v. CHADWICK.

No. 11578—Opinion Filed July 17, 1923.

1. **Brokers—Real Estate Agents—Right to Commission for Sale — Procuring Cause.**

To entitle an agent to a commission there must be an employment, and his services must be the immediate and effective cause of the bargain. But if the services of the agent, whatever they be, fail to accomplish a sale, and afterwards the owner through his own efforts, without fraud, effects a sale, the agent is not entitled to a commission, because he is not the procuring cause of the sale.

2. **Same.**

To be the procuring cause of a sale, an agent must first call the purchaser's attention to the property, and start negotiations which culminate in the sale thereof.

3. **Same Insufficiency of Evidence.**

The evidence examined, and held, that plaintiff was neither the procuring cause of the sale nor the efficient agent in effecting it, and was not entitled to a commission therefor.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by T. W. Chadwick against N. B. Mathews. Judgment for plaintiff, and defendant brings error. Reversed.

Chas. L. Orr, for plaintiff in error.

C. F. Green, L. H. Green, and I. M. King, for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of Pontotoc county on the 26th day of October, 1916, by T. W. Chadwick, defendant in error, plaintiff below, against N. B. Mathews, plaintiff in error, defendant below, to recover the sum of $1,250, alleged to be due him as commission on the sale of a ranch, consisting of 504 acres, situated one and one-half miles southeast of Roff, in Pontotoc county, Okla. For convenience the parties will be hereinafter referred to as they appeared in court below.

The petition alleged that the defendant was the owner of a ranch consisting of 504 acres, situated one and one-half miles southeast of Roff, Pontotoc county, Okla., and that on or about the 22nd day of September, 1916, he entered into a verbal contract with the plaintiff, the consideration of which was that if plaintiff could find a buyer for said ranch, who was able, willing, and ready to purchase the same for the sum of $7,500, or more, and was the moving cause of the sale, the defendant would pay the plaintiff one-half of the amount that the purchaser would pay over and above said sum of $7,500.

The petition then alleges that the plaintiff did find one B. S. Sherman, who agreed to purchase and did purchase said ranch from the defendant for the sum of $10,000, whereby the defendant became indebted to plaintiff in a sum equal to one-half of $2,500, or the sum of $1,250, which the defendant refused to pay, although the purchase of said ranch had been brought about through plaintiff's efforts.

The defendant admitted his ownership of the ranch in controversy, and that he had sold same to B. S. Sherman, but denied all other material allegations in said petition contained.

A reply in the nature of a general denial was filed by the plaintiff, and thereafter on the 13th day of January, 1920, the cause was tried to a jury, which returned a verdict against the defendant for the sum of $400. At the conclusion of plaintiff's testimony, the defendant interposed a demurrer to the evidence introduced on behalf of plaintiff, which was overruled and exceptions saved. And again at the conclusion of all of the evidence introduced, the defendant moved for a directed verdict, which was overruled, and exceptions saved. Motion for a new trial was filed and overruled, and the defendant appeals.

The only assignments of error discussed and relied upon by counsel for defendant in his brief, as grounds for a reversal, are: First, error of the trial court in overruling the demurrer of the defendant to the evidence introduced by the plaintiff, and in overruling his request for a peremptory instruction. Second, error in the giving of certain instructions and in refusing other requested instructions.

Did the court err in overruling defendant's demurrer to the evidence of the plaintiff at the conclusion of plaintiff's evidence? This proposition presents for consideration the sufficiency of the evidence to sustain the judgment of the court. We are called upon to say whether or not under the facts as disclosed by the record there was any legal evidence to sustain the verdict of the jury. To determine this question, it is necessary to review the evidence.

On cross-examination, the plaintiff testified in answers to questions propounded to him, as follows:

"Q. I understood you on direct examination to say that you brought Mathews to Ada some 15 or 20 times to see Sherman

and communicate with him, that correct? A. And other people, Sherman and other people, we were trying to sell it to various different parties. Q. Who else you bring him to Ada to see besides Sherman? A. Loan companies. Q. Trying to sell it to loan company? A. No, trying to borrow enough money for it to be deeded to me and divide the profits. Q. Out of what you got out of the loan company? A. Yes, buy it with what I got on the loan. * * * A. You proceeded to try to negotiate a loan on it for $8,000? A. Yes. Q. Not able to get that loan? A. No, sir. Q. Could not get it? A. No, sir. Q. As a matter of fact, at the time Mathews opened his negotiations with Sherman you never knew Sherman did you? A. No, sir. Q. Never had known him? A. No, sir. Q. Mathews himself opened negotiations with Sherman to sell him this land, and afterwards got you to take them down there in the car? A. Yes, he told me along about it, even before he went and saw Sherman; talked about it before he saw Sherman. Q. And then introduced you to Sherman and got you to take them down in the car? A. Yes. Q. And did you go out in the car? A. Yes. Q. And Mathews went and showed Sherman the land? A. Yes, drove all over the land. Q. And the first time you saw Sherman to know who he was you and Mathews came up to Ada in car with Clay Jones? A. Yes. Q. Mathews got out of the car and went back to see Sherman and you asked Clay Jones who that man was? A. Yes. Q. That is a fact, isn't it? A. Yes, sir."

In his examination in chief, the plaintiff testified in answer to a question propounded by his counsel as follows:

"The agreement was that if I would assist him in selling the place—he just wanted $7,500 for it, and on this first agreement I was to buy it and borrow that much on it and sell it for more and divide the profits with him; in the meantime we were trying to borrow this money to buy it with when he found a buyer, Mr. Sherman, and he said we will just get rid of all that and sell it to Sherman and you assist me and use your automobile and everything else and we will divide the profits over the $7,500."

It clearly appears from plaintiff's own testimony that he had been trying to borrow $7,500 on this ranch to obtain funds with which to purchase it, and though it appears that the plaintiff applied himself industriously, all of his efforts were fruitless. The plaintiff does not claim that any effort that he put forth to obtain a loan on the ranch had any connection with the purchase of the ranch by Sherman. He does not pretend that he found Sherman and introduced him to the defendant, and his own evidence conclusively shows that he was not the procuring cause of the purchase of this ranch

by Sherman from the defendant. But, on the other hand, his evidence shows that the defendant himself found Sherman and sold him the ranch independently of any aid or assistance whatever from the plaintiff. That the plaintiff's long quest for a loan went unrewarded is unfortunate, but his labors can avail him nothing here, unless it can be shown that such labors were the efficient and procuring cause of the sale.

Plaintiff, however, insists that there is still evidence to sustain the claim, because, as testified by him, the defendant, after he had himself found a purchaser who was able and willing to buy the ranch, promised to divide equally with plaintiff the excess of the sale price over $7,500.

We freely concede that it is competent for individuals to change and modify an original agreement by a subsequent contract, or to substitute in place of the first contract an entirely new agreement, and that the subsequent agreement, if supported by a good consideration, will supersede the original contract and will be enforced. Conceding that the agreement was made as testified to by the plaintiff, it was a mere nudum pactum and void. By the terms of the agreement, if made at all, the plaintiff was not bound to do anything. There was no consideration moving to the defendant to support the promise which the plaintiff insists was made. In all contracts, and especially in contracts by the terms of which agents or brokers are employed to negotiate and sell real estate for a principal, the right to recover upon the contract is grounded upon a showing that the agent was the efficient and procuring cause of the sale.

In Pitts v. Pitts, 63 Okla. 185, 164 Pac. 105, this court held:

"The court should have instructed a verdict for defendant. The mere introduction to the owner by a broker of one who thereafter purchases the premises does not entitle the broker to a commission for the sale of the premises, where the purchaser has already seen and is fully advised as to the property, and has already determined to purchase the same. * * * Before the broker is entitled to a commission, he must be the procuring cause of a sale, and to be the procuring cause of a sale the broker must first call the purchaser's attention to the property and start negotiations, which culminate in the sale thereof."

In the syllabus, the court said:

"The fact that a broker possesses the same surname as the owner of the premises, and by mistake of the intending purchaser is accidentally brought into contact with such purchaser whom he never saw before, where

the broker does nothing further than to direct the intending purchaser to the true owner, after an unsuccessful attempt to make a sale, who thereafter negotiates a sale of the property, does not entitle the broker to a commission."

In Ludeman v. English, Exe'x, 78 Okla. 177, 189 Pac. 531, it is said:

"To entitle an agent to a commission there must be employment, and the agent's services must be the effective cause of the bargain."

The doctrine in the above cases finds support in Wheelan et al. v. Hunt, 37 Okla. 523, 133 Pac. 52, and Yarborough v. Richardson, 38 Okla. 11, 131 Pac. 680.

In the Wheelan Case, supra, the court, in the syllabus, said:

"To be the procuring cause of a sale, a broker must first call the purchaser's attention to the property, and start negotiations which culminate in the sale thereof."

We are of the opinion that the court should have instructed a verdict for the defendant. Under the evidence and in accordance with the rule declared in the foregoing authorities, plaintiff was neither the procuring cause of this sale nor the efficient agent in effecting it. The purchaser obtained his information prior to seeing plaintiff. The moving and procuring cause of this sale occurred before plaintiff knew of the purchaser, or of his desire to acquire the property, and the plaintiff had no connection with the efficient agency that brought it about, and the sale clearly was not a result of his efforts.

The judgment of the trial court is therefore reversed.

By the Court: It is so ordered.