## CANTRELL v. McLEMORE et al.

No. 16953—Opinion Filed Sept. 14, 1926.

1. Brokers—"Procuring Cause" of Sale.
To be the procuring cause of a sale, a

broker must first call the purchaser's attention to the property, and start negotiations which culminate in the sale thereof.

**2. Same—Sale Consummated by Owner After Failure and Abandonment by Broker.**

If a broker fails to bring the minds of the parties to an agreement and the transaction is abandoned, and afterwards the owner, through his own efforts, without fraud, effects a sale, the broker is not entitled to a commission, because he is not the procuring cause of the sale.

**3. Same—Broker's Exclusive Right or Agency to Sell—Contract as Requisite.**

A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite time, unless he is granted one or the other in express terms; and in the absence of such grant the owner may, independent of the broker, sell either through his own efforts or those of another without liability to the broker.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from County Court, Jackson County; J. M. Williams, Judge.

Action by J. W. McLemore and L. R. Givens against John Y. Cantrell to recover a real estate broker's commission. From a judgment for plaintiffs, defendant brings error. Reversed and remanded, with directions.

Guy P. Horton, for plaintiff in error.

E. E. Gore, for defendants in error.

Opinion by PINKHAM, C. The defendants in error instituted this action in the county court of Jackson county against the plaintiff in error, to recover a real estate brokerage commission for the sale of land. The case was tried to the court without the intervention of a jury. The parties will be referred to as they appeared in the trial court.

At the conclusion of all the evidence the court rendered judgment in favor of the plaintiffs that they have and recover of and from the defendant the sum of $300 with interest and costs. Defendant's motion for a new trial was overruled, and the case comes regularly on appeal by the defendant to this court by petition in error and case-made attached for review.

For reversal of the judgment the principal proposition presented is that this cause should be reversed and remanded because the judgment is contrary to law and the evidence.

The record discloses that the defendant John Y. Cantrell, was, on and prior to the 15th day of December, 1924, the owner of certain land described in plaintiffs' petition It appears that in the latter part of December, 1924, the defendant visited the office of the plaintiffs who were real estate brokers, for the purpose of listing his farm for sale.

The plaintiff J. W. McLemore testified that defendant, Cantrell, told him at that time he had offered the farm to one Calvin Marshall "for $4,500 over and above the loan and equity in the place." In answer to the question: "What agreement did you make in regard to selling this place?" the witness said, "Well, after he told me about wanting to sell it I said to Mr .Cantrell, 'I believe we can sell that place for that money,' and he said, 'I want this $4,500 clear money,' and I said, 'All right; we can sell it for enough to make our commission over and above that.'"

That was about the extent of the conversation between Mr. Cantrell and Mr. McLemore with reference to selling the defendant's land.

It appears that later, when the plaintiff L. R. Givens, Mr. McLemore's partner, came to their office, he was told by McLemore of the conversation he had just had with the defendant, Cantrell, with respect to the sale of the land in question. It further appears that Mr. McLemore had nothing further to do in the matter.

The plaintiff Givens testified that his partner, McLemore, first called his attention to the fact that the defendant, Cantrell, had listed his land for sale with the firm in the latter part of December, 1924; that he had taken two different parties to the land to look it over; that he met Mr. Cantrell on those trips, and that Cantrell told him that he wanted $4,500 over and above the $6,000 school land loan; that neither of the persons that he had taken to see the land cared to buy it; and that some time later Mr. McLemore told him that he had a conversation with Mr. Cantrell about what Mr. Marshall had offered for the place; that Marshall did not tell him whether he wanted to buy the place or not.

Mr. Givens further testified in substance that he knew Mr. Marshall was talking about buying and wanted to look at some places; that he went to him and asked him how he would like to buy or trade for the farm in question, and that Marshall told him he had talked with Mr. Cantrell who had offered the farm to him, Marshall, for $4,-500, less the loan, and that Marshall said he was not interested in it; that witness

then asked Mr. Marshall about trading his, Marshall's, house in town in on the farm, and that Marshall said he would go and look at the farm; that witness and Marshall went to the Cantrell farm, and then went to look at Mr. Marshall's house and lot. The witness then testified as follows:

"Then we talked to Mr. Cantrell about trading it (the farm) for this house of Mr. Marshall's here in town, and when the proposition of the paving taxes came up, and Mr. Cantrell refused to trade and I got in my car and drove back to my office and he (Cantrell) told me if Mr. Marshall would give him $4,800 he would sell, and after that Mr. Cantrell and Mr. Marshall had got together and I understand he (Marshall) bought the place and assumed the loan."

The plaintiff Givens further testified that subsequently he asked Marshall $11,000 for the plaintiff's land, and that Marshall would not buy 't at that price.

Mr. McLemore and Mr. Givens were the only witnesses on behalf of the plaintiffs, and after the demurrer to the evidence was overruled Calvin Marshall, the purchaser of the farm in question, testified in substance that he purchased the said farm on the 3rd day of January, 1924, from the defendant, Cantrell; that Cantrell first approached him in regard to buying the farm the first Saturday after Christmas, 1924, and that Mr. Cantrell said he would take $4,500, and told him what there was against it, and that he, Marshall, inquired as to the taxes, and that Cantrell said there might be some taxes but he did not know for sure, and that he then told Cantrell that he would look at it, and that at that time Mr. Givens had never talked to him about it; that a few days after that Mr. Givens stated to him that Cantrell wanted to sell his farm and would trade it for a house in town; that a Mr. Ford had been trying to sell Cantrell a house in town and he, Givens, "thought if I could pay him $500 cash he, Cantrell, would trade, and then we went down and looked at the place"; that Mr. Givens did not attempt to sell the farm at that time, but did talk about taking the farm in exchange for his house in town; that he went with Mr. Givens to the Cantrell farm for the purpose of making a trade of his house and lot for the Cantrell farm; that Mr. Givens took Mr. Cantrell to the town of Altus and showed him Marshall's house; that he, Marshall, then talked to Mr. Cantrell about the trade; that when he told Cantrell about certain paving taxes that were unpaid Mr. Cantrell seemed surprised, and did not want to trade, and that later, on the same day, he purchased the farm from Mr. Cantrell

for $4,800—paying $1,000 in cash and a note and mortgage for $3,800, payments to bear 6 per cent. interest from date.

The defendant testified in substance that he listed his farm with Mr. McLemore for sale; that nothing was said with reference to how much he should get for selling the farm, but that he supposed that he would get the regular commission; that that was the way it was listed; that subsequently Mr. Givens came to his place with Marshall, and that Mr. Givens told him they wanted to "swap" the farm for Mr. Marshall's house and lot in town; that he looked at the house and declined to accept the proposition, and a ter that he sold the property in question to Mr. Marshall for $4,800 "covering it all, taxes and everything," which left him $4,500 net.

It was the theory of the plaintiffs in the court below, and is their theory here, that the defendant listed his land with the plaintiff McLemore for sale under the agreement that all over $4,500 derived from the sale should be retained by the plaintiffs as a commission for their services, and that as the evidence discloses that the defendant sold his farm to Marshall for $4,800, they are entitled to recover the sum of $300 as their commission.

An examination of the evidence shows that while the defendant sold his farm for $4,800, he paid $300 from that sum as interest on the school land loan and for taxes, which left him $4,500 net. Mr. McLemore testified that the defendant told him when he listed the land in question with him, that he, Cantrell, said "I want this $4,500 clear money"; but as we view this case, that is not the vital question to be determined. The appeal turns substantially upon the answer to the question: Were the plaintiffs the procuring cause of the sale?

The plaintiffs allege in their petition:

"That the said sale was brought about by the exertions of the plaintiffs in that they introduced and disclosed the name of the party with whom the said John Y. Cantrell was negotiating for the sale of said land, and caused the meeting of the said John Y. Cantrell and the said Calvin Marshall for the purpose of entering into negotiations for said sale, and as a result of plaintiff's efforts they were the effectual and procuring cause of said sale of said land to Calvin Marshall by said John Y. Cantrell."

These allegations were essential in order to state a cause of action, and if the proof sustained such averments no question would arise as to the right of plaintiffs to recovery, assuming that the defendant sold his land

for $300 more than the $4,500 net to him under the terms of his agreement with the brokers.

The evidence is conclusive upon the point that the plaintiffs did not introduce and disclose the name of the purchaser, Calvin Marshall, to the defendant. As a matter of fact, the owner, Cantrell, introduced Marshall, who subsequently purchased the land, to the plaintiffs—that is to say, the defendant at the time he listed his farm with the plaintiffs informed the broker, McLemore, that Marshall had been offered the land at $4,500 net.

Many decisions of this court have announced the rule that, to be the procuring cause of a sale, an agent must first call the purchaser's attention to the property, and start negotiations which culminate in the sale thereof. Wheelan et al. v. Hunt, 37 Okla. 523, 133 Pac. 52; Ludeman v. English, 78 Okla. 177, 189 Pac. 531; Mathews v. Chadwick, 91 Okla. 202, 217 Pac. 432; Coleman v. Moreland, 89 Okla. 128, 213 Pac. 843; Bohnefeld v. Wahl et al., 97 Okla. 48, 215 Pac. 777; Fitch v. Braddock et al., 93 Okla. 78, 219 Pac. 703.

In the instant case there is no dispute as to the fact that the plaintiff Givens undertook to negotiate a trade with Marshall for the exchange of his house and lot for defendant's farm. In that transaction the plaintiffs were acting as the agents of Marshall, who, the evidence discloses, agreed to pay the plaintiffs a commission to consummate that trade. In that transaction the evidence discloses without conflict that the defendant, Cantrell, knew nothing of the proposed trade until Marshall and the plaintiff Givens came out to his farm for the purpose of submitting to Cantrell the trade proposition. That transaction terminated when the defendant declined to trade on the basis of an exchange of properties.

After this trade the defendant and Marshall renewed their former negotiations, which resulted in a sale of the farm, by the defendant to Marshall, who assumed the mortgage of $6,000 on the land and refunded to the defendant the amount of taxes and interest he had already paid, leaving to the defendant $4,500 net.

The plaintiffs had nothing to do with the sale in fact made, nor did they know of it until after it had been consummated. Under such a state of facts it cannot be said the plaintiffs were the procuring cause of the sale.

Furthermore, it will be observed that the agreement as testified to by the plaintiff McLemore did not give to the broker the exclusive right to sell, in which situation it is generally held that in the absence of such express grant the owner may sell independently either through his own efforts or those of another. 4 R. C. L. 259, sec. 12.

In Ludeman v. English, supra, it is held in the third paragraph of the syllabus that:

"If a broker fails to bring the minds of the parties to an agreement, and the transaction is abandoned, and afterwards the owner, through his own efforts, without fraud, effects a sale, the broker is not entitled to a commission, because he is not the procuring cause of the sale."

The record before us contains no evidence of bad faith of the defendant, or that plaintiffs were in any way instrumental in inducing or bringing about the sale made by the defendant.

In 10 A. L. R. 814, it is said in a note following the case of Roberts v. Harrington, 168 Wis. 217, 169 N. W. 603:

"If the property is merely placed in the broker's hands for sale, or the broker is given a mere right to sell, the owner himself may make a sale without liability to the broker for commissions, provided the broker has not done the work required to earn his commission, and the owner's sale does not directly interfere with his efforts, or appropriate the fruits of his labors."

In support of this proposition decisions from many states are cited, including Oklahoma (Roberts v. Markham, 26 Okla. 387, 109 Pac. 127).

In the case of Head-Berry Co. v. Bannister, 52 Okla. 763, 153 Pac. 669, it is said:

"A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite time, unless he is granted one or the other in express terms; and in the absence of such grant the owner may, independent of the broker, sell either through his own efforts or those of another."

We conclude from a careful examination of the evidence adduced on the trial of this cause, that the plaintiffs were not the procuring cause of the sale in any such sense as will entitle them to a commission, and that the county court erred in rendering judgment for the plaintiffs.

We think the judgment should be reversed, and the cause remanded, with directions to the lower court to enter a judgment for the defendant.

By the Court: It is so ordered.

Note.—See under (1) 9 C. J. p. 613, § 96.

(2) 9 C. J. p. 621, §99; L. R. A. 1917E, 1175; 9 A. L. R. 1194. (3) 9 C. J. p. 623, §101; 26 A. L. R. 784; 10 A. L. R. 814; 20 A. L. R. 1268.