Dear State Senator Brogdon
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the Oklahoma Real Estate License Code, 59 O.S. 2001and Supp. 2005, §§ 858-101 through 858-732, as amended duringthe First Regular Session of the 50th Legislature, prevent theseller in a real estate transaction from receiving offers andcounteroffers directly?
 2. Do 59 O.S. Supp. 2005, §§ 858-353[59-858-353] and 858-354 require alisting broker to receive written offers and counteroffers from abuyer or a buyer's broker if the seller instructs the listingbroker he or she wants to receive offers and counteroffersdirectly, and does not want offers and counteroffers to gothrough the listing broker?
 3. If the answer to question number two is no, is a buyer'sbroker required to deliver an offer from his or her client to aseller if the listing broker refuses to receive the offer uponthe instruction of the seller?
¶ 1 Effective November 1, 2000, Oklahoma adopted as part of the Oklahoma Real Estate License Code ("Code"), certain statutes governing real estate brokers. See 1999 Okla. Sess. Laws ch. 194 §§ 1-13 (codified at 59 O.S. 2001, §§ 858-351-858-363). These statutes provide that the duties and responsibilities of a broker "shall replace and abrogate the fiduciary or other duties of a broker to a party based on common law principles of agency."59 O.S. 2001, § 858-360[59-858-360].
¶ 2 In 2005, the Legislature amended portions of the Code governing real estate brokers. See 2005 Okla. Sess. Laws ch. 423, §§ 1-4 (amending 59 O.S. 2001, §§ 858-351-858-354). These amendments modify definitions of certain terms used in the Code and add language to set forth the duties and responsibilities of transaction brokers and single-party brokers.
 The 2005 Amendments to the Oklahoma Real Estate License Code Do Not Prevent a Seller in a Real Estate Transaction from Receiving Contracts Directly.
¶ 3 You first ask whether the 2005 amended legislation prevents a seller in a real estate transaction from receiving offers and counteroffers directly. We interpret this question as asking whether a seller may sell his or her property without the assistance of a real estate broker. To the extent that this question asks whether a seller, who is in a contractual relationship with a broker, may receive offers and counteroffers directly, that question will be discussed below in response to your second inquiry.
¶ 4 The 2005 amendments are part of the Code. See 59 O.S.2001 Supp. 2005, §§ 858-101-858-732. The Code, among other things, establishes an Oklahoma Real Estate Commission ("Commission") that has "the authority to regulate and issue real estate licenses in the State of Oklahoma." 59 O.S. Supp. 2005, §858-201[59-858-201](A). The Commission has a number of statutory powers, including the power to "issue licenses to and regulate the activities of real estate brokers, provisional sales associates, sales associates, branch offices, nonresidents, associations, corporations, and partnerships[.]" Id. § 858-208(5).
¶ 5 Section 858-301 provides that it is "unlawful for any person to act as a real estate licensee, or to hold himself or herself out as such, unless the person [is] licensed to do so under this Code." Id. That section creates exceptions from licensure providing specifically that nothing in Section 858-301 shall:
 1. Prevent any person, partnership, association or corporation, or the partners, officers or employees of any partnership, association or corporation, from acquiring real estate for its own use, nor shall anything in this section prevent any person,
partnership, association or corporation, or the partners, officers or employees of any partnership, association or corporation, as owner, lessor or lessee of real estate, from selling, renting, leasing, exchanging, or offering to sell, rent, lease or exchange, any real estate so owned or leased, or from performing any acts with respect to such real estate when such acts are performed in the regular course of, or as an incident to, the management, ownership or sales of such real estate and the investment therein[.]
Id. (emphasis added). Under the unambiguous language of this statute, which was not altered by the 2005 amendments, a person may sell his or her own real estate. This necessarily entails a right to receive offers and counteroffers. The statutory amendments, which will be discussed more thoroughly below, amended certain duties of transaction brokers and single-party brokers, but did not do so to the extent that they prevent a seller from selling his or her own property independently of a broker.
¶ 6 Established case law recognizes that absent an exclusive right granted to a broker to sell real property, a property owner has the right to sell property independently of a broker.Kennedy Kennedy v. Vance, 202 P.2d 214, 214-15 (Okla. 1949); see Cantrell v. McLemore, 249 P. 417, 419 (Okla. 1926).
¶ 7 Thus, to answer your first question, the 2005 amendments to the Code do not prevent a seller in a real estate transaction from receiving offers and counteroffers directly.
 The Amended Statutes Do Not Require a Seller's Broker to Receive Written Offers and Counteroffers If the Seller Instructs the Broker the Seller Wants to Receive Offers Directly.
¶ 8 You next ask whether the 2005 statutory amendments require a seller's listing broker to receive written offers and counteroffers from a buyer or a buyer's broker if the seller has instructed the listing broker the seller wants to receive offers directly and does not want offers to go through the listing broker. In other words, may a seller's broker and a seller agree for a seller to receive offers and counteroffers directly rather than through the seller's broker who has listed the property?
¶ 9 The two types of real estate brokers, single-party brokers and transaction brokers, are defined by statute. A single-party broker is defined by 59 O.S. Supp. 2005, § 858-351[59-858-351](3) as "a broker who has entered into a written brokerage agreement with a party in a transaction to provide services for the benefit of that party[.]" A transaction broker is "a broker who provides services by assisting a party in a transaction without being an advocate for the benefit of that party." Id. § 858-351(5). "Party" is defined in the Code as "a person who is a seller, buyer, landlord, or tenant or a person who is involved in an option or exchange[.]" Id. § 858-351(2). Both types of brokers assist a party to the transaction. The difference between the two types of brokers is that a transaction broker merely assists a party but does not act as an advocate.
¶ 10 Section 858-355(B)(1)-(3) governs the situations where a broker may assist both parties to a transaction. That statute provides for entering into three different types of relationships:
 1. As a transaction broker for both parties;
 2. As a single-party broker for one party and a transaction party for the other party . . .; or
 3. As a transaction broker where the broker has previously entered into a written brokerage agreement to provide services as a single-party broker for both parties."
Id.
¶ 11 According to 59 O.S. Supp. 2005, § 858-352[59-858-352], a real estate broker may enter into a written brokerage agreement to provide services either as a single-party broker or a transaction broker. If there is no written brokerage agreement, the broker shall perform services only as a transaction broker. The 2005 amendments added language to Section 858-352 as follows:
 All brokerage agreements shall be deemed to incorporate as material terms the duties and responsibilities set forth in subsection A of Section 858-353 or subsection B of Section 858-354 of this title, based upon whether the relationship established by the brokerage agreement is a transaction broker relationship or a single-party broker relationship.
2005 Okla. Sess. Laws ch. 423, § 2. Thus, it is necessary to examine brokers' mandatory statutory duties.
¶ 12 Sections 858-353 and 858-354 of the Code governing the duties of transaction brokers and single-party brokers, respectively, underwent a number of amendments during the 2005 legislative session. The following changes were made to Section 858-353 regarding transaction brokers.
 A. A transaction broker shall have the following duties and responsibilities, which are mandatory and may not be abrogated or waived by a transaction broker:
 1. To perform the terms of the written brokerage agreement, if applicable;
 2. To treat all parties with honesty and exercise reasonable skill and care;
 3. To comply with all requirements of the Oklahoma Real Estate License Code and all applicable statutes and rules; and
 4. To exercise reasonable skill and care including
 2. To be available to:
 a. receive all written offers and counteroffers;
 b. reduce offers or counteroffers to a written form upon request of any party to a transaction, and
 c. present timely presentation of all such
written offers and counteroffers;
 b. keeping the party for whom the transaction broker is providing services fully informed regarding the transaction;
 e. timely accounting;
 3. To inform in writing the party for whom the broker is providing services when an offer is made that the party will be expected to pay certain closing costs, brokerage service costs and approximate amount of said costs;
 4. To account timely for all money and property received by the broker;
 d. keeping;
 5. To keep confidential information received from a party confidential as required by Section 7 of this act, and 858-357 of this title
 e. disclosing;
 6. To disclose information pertaining to the property as required by the Residential Property Condition Disclosure Act; and
 7. To comply with all requirements of the Oklahoma Real Estate License Code and all applicable statutes and rules.
 B. Except as provided in Section 858-358 of this title, such duties and responsibilities set forth in this section shall be performed by a transaction broker if such duties and responsibilities relate to the steps of the transaction which occur while there is a broker relationship.[1]
C. Nothing in this section requires or prohibits a transactionbroker from charging a separate fee or other compensation foreach duty or other services provided during a transaction.
 D. If a transaction broker intends to perform fewer services than those required to complete a transaction, written disclosure shall be provided to the party for whom the broker is providing services. Such disclosure shall include a description of those steps in the transaction for which the broker will not perform services, and also state that a broker assisting the other party in the transaction is not required to provide assistance with these steps in any manner.
2005 Okla. Sess. Laws ch. 423, § 3 (footnote added).
¶ 13 You ask whether the 2005 amendments require a listing broker to receive written offers and counteroffers from a buyer or a buyer's broker if a seller has instructed the broker the seller wants to receive offers directly and does not want offers to go through the listing broker. We have answered a similar question in the past with regard to transaction brokers.
¶ 14 In Attorney General Opinion 04-37 we determined, based on the statutory law in effect at that time, that if the transaction broker and the seller with whom the broker has contracted, agree that the seller will directly receive offers, 59 O.S. 2001, §858-353[59-858-353](4)(a) did not require the transaction broker to receive offers. A.G. Opin. 04-37, at 251. The basis for our Opinion was that in construing the scope of duties imposed by Section 858-353 we could not impose additional requirements not mandated by the Legislature. Id. at 248-49. We concluded that although the statutes and rules required a transaction broker to communicate offers to the seller with whom the broker has contracted if he or she receives such offers, neither the statutes nor the rules state that a transaction broker must receive offers that might otherwise be communicated directly to the seller. Id. at 250. We have examined the 2005 amendments and conclude that the amendments do not require a broker to receive offers and counteroffers if the broker has been instructed that the seller wishes to receive offers and counteroffers directly.
¶ 15 Section 858-353(A) of Title 59, as amended, provides that a transaction broker "shall have the following duties and responsibilities, which are mandatory and may not be abrogated or waived by a transaction broker[.]" One of those duties is that the transaction broker "be available to: a. receive all written offers and counteroffers, b. reduce offers or counteroffers to a written form upon request of any party to a transaction, and c. present timely such written offers and counteroffers[.]"Id. § 858-353(A)(2) (emphasis added). Section 858-354, applying to single-party brokers, contains the same "be available to" language. Id. § 858-354(B)(2) (emphasis added).
¶ 16 The amendments do not place a mandatory duty on brokers toreceive all such offers and counteroffers, but require that the broker be available to receive such offers. See id. This raises the question: what does it mean to be available? We know that by the use of this term rather than the term "to receive," the Legislature meant something other than to establish a mandatory duty on brokers to receive offers and counteroffers. The word "available" is not given a specific definition in the Code but is defined by the Merriam-Webster's CollegiateDictionary, Eleventh Edition as "qualified and willing to do something or to assume a responsibility." Id. at 84. When words are not expressly defined in a statute, their ordinary meaning is used. 25 O.S. 2001, § 1[25-1]; City of Durant v. Cicio,50 P.3d 218, 221 (Okla. 2002). Accordingly, we interpret the term "available" as being willing to be of assistance. Under this interpretation, if a seller chooses for a transaction broker or single-party broker to receive offers or counteroffers, the broker must be of assistance and do so. However, if the seller chooses to receive those offers directly, nothing in the Code requires the transaction broker to receive those offers or counteroffers. In such a situation, the broker is available to the party whom he or she represents in the sense that he or she is willing to assist, but that party does not require the broker's assistance.
¶ 17 This conclusion is consistent with the statutory provisions governing written brokerage agreements, as it recognizes that a broker has a duty to the party with whom the broker has contracted, whether the duty is to assist or to advocate. Except where specifically articulated in the statute, the broker does not have a statutory duty to the other party in the transaction. The Code does require that any party may request a broker to "reduce offers or counteroffers to a written form."59 O.S. Supp. 2005, §§ 858-353[59-858-353](A)(2)(b) and 858-354(B)(2)(b). However, the Code does not provide that any party may request that a broker receive all written offers and counteroffers or timely present all such offers. The duty of the seller's broker is to the seller, and that duty is recognized by the agreement between the seller and the broker. If the seller chooses to receive offers directly, the seller and the broker may contract for that to occur. If a buyer or a buyer's broker presents an offer to the seller's broker in such a situation, the broker would simply inform the buyer that the seller will receive the offer directly.
¶ 18 The amended definition of the term "transaction" also demonstrates that a broker is not required to receive all offers and counteroffers. The term "transaction" was amended by the 2005 legislation to mean:
 [A]ny or all of the steps that may occur by or between parties when a party seeks to buy, sell, lease, rent, option or exchange real estate and at least one party enters into a broker relationship subject to this title. Such steps may include, without limitation, soliciting, advertising, engaging a broker to list a property, showing or viewing a property, making offers or counteroffers, entering into agreements and closing such agreements[.]
2005 Okla. Sess. Laws. ch. 423, § 1 (amending 59 O.S. 2001, §858-351[59-858-351](4)). The fact that a transaction includes any of a number of steps demonstrates that not all steps are required to complete an exchange of property. This statute recognizes that a broker may perform limited services.
¶ 19 This conclusion is also consistent with the language in the amended Section 858-353(D) that "[i]f a transaction broker intends to perform fewer services than those required to complete a transaction, written disclosure shall be provided to the party for whom the broker is providing services." Id. This language demonstrates that a transaction broker may perform limited services associated with a transaction without performing each step required to complete the transaction. This same language exists with regard to single-party brokers, providing that "[i]f a single-party broker intends to perform fewer services than those required to complete a transaction, written disclosure shall be provided to the party for whom the broker is providing services." Id. § 858-354(F).
¶ 20 Subsection C of Section 858-353 relating to transaction brokers and subsection E of Section 858-354 relating to single-party brokers also supports this conclusion, as they provide that nothing "requires or prohibits a . . . broker from charging a separate fee or other compensation for each duty or other services provided during a transaction." This indicates the Legislature's intent that a broker may provide only certain services which constitute steps in a completed transaction. For example, a broker may agree with a seller to list or show a property but not to receive offers and counteroffers.
¶ 21 To interpret the statutory provisions to prevent a seller from receiving offers or counteroffers directly would be inconsistent with the provision which authorizes a broker to perform fewer services than those required to complete a transaction and to read a requirement into the statute which does not exist.
¶ 22 The amended provisions of 59 O.S. Supp. 2005, §858-353[59-858-353](B) pertaining to transaction brokers and Section 858-354(D) pertaining to single-party brokers do not support a different conclusion. See 2005 Okla. Sess. Laws ch. 423, §§ 3, 4. Section 858-353(B) provides that "[e]xcept as provided in Section 858-358 of this title, such duties and responsibilities set forth in this section shall be performed by a transaction broker if such duties and responsibilities relate to the steps of the transaction which occur while there is a broker relationship." Id. Section 858-354(D) contains the same language with regard to single-party brokers. See id.
¶ 23 To properly understand these sections it is important to recognize that the term "transaction" means "any or all of the steps that may occur" during the exchange of real estate and that a broker relationship may not necessarily include all steps to the exchange of property. Id. § 858-351(4). It is also necessary to refer back to the "duties and responsibilities" of a broker referenced in Sections 858-353 and 858-354. Since we have determined there is no requirement on the part of a broker to receive offers and counteroffers absent an agreement to the contrary, there is no requirement that a broker receive all offers and counteroffers regardless of the intent of the parties. To conclude otherwise would ignore other statutory provisions which authorize a broker to perform fewer services than those required to complete a transaction.
¶ 24 The single-party broker has an additional duty that has not been imposed on transaction brokers. That requirement is "[t]o obey the specific directions of the party for whom the single-party broker is performing services that are not contrary to applicable statutes and rules or contrary to the terms of a contract between the parties to the transaction[.]" 59 O.S.Supp. 2005, § 858-354[59-858-354](A)(9). As we have discussed, an agreement with a seller that the seller will receive offers and counteroffers directly is not contrary to applicable statues. Such a directive is also not contrary to applicable rules. Currently, the Oklahoma Real Estate Commission's Administrative Rules contain a section entitled "Prohibited dealings." Rule605:10-17-4 provides that within the meaning of Section 858-312(8) of the Code,[2] "untrustworthy, improper, fraudulent or dishonest dealing[s] shall include, but not be limited to," a number of things including, "[f]ailure to reduce an offer to writing, when a proposed purchaser requests suchoffer to be submitted" and "[f]ailure to submit all bona fide offers[3] to an owner when such offers are received priorto the seller accepting an offer in writing." OAC605:10-17-4(10), (11) (2003) (emphasis added) (footnote added). Neither these rules nor any other rules impose a duty to receive offers or counteroffers.[4]
¶ 25 Thus, we conclude that a seller's broker is not required to receive offers and counteroffers but must "be available to" receive such offers if that is the arrangement agreed upon by the seller and the broker. We recognize that brokers are required to perform the mandatory services set forth in Sections 858-353 and 858-354 in Title 59. However, as the statutes require "beingavailable to" receive all offers and counteroffers but do not specifically mandate " receiving" all offers and counteroffers, no statutory duty is breached if a seller's broker and the seller agree for the seller to receive offers directly.
 A Seller May Waive Mandatory Duties and Responsibilities of a Transaction Broker That May Not Be Waived or Abrogated by the Transaction Broker.
¶ 26 An additional factor exists with regard to transaction brokers. Pursuant to 59 O.S. Supp. 2005, § 858-353[59-858-353](A), even if a transaction broker had a duty to present all offers, a seller who is in a relationship with a transaction broker may choose to waive this duty and accept his or her own offers. That section provides that a transaction broker's duties and responsibilities "are mandatory and may not be abrogated or waived by atransaction broker." Id. (emphasis added). Thus, while the transaction broker may not waive his or her duties, a seller could choose to waive the duties. The Legislature is presumed not to do a vain and useless act in enacting new laws. Strong v.Laubach, 89 P.3d 1066, 1070 (Okla. 2004). Therefore, the fact that the amended legislation requires that a transaction broker's duties may not be waived by the transaction broker is significant. Limiting the inability to waive to the transaction broker demonstrates that a transaction broker's duties may be waived by the other party. In the situation you reference, even assuming a duty on the part of a transaction broker to receive offers and counteroffers, a seller could choose to waive this duty by receiving offers directly. In that case, a transaction broker would not have a duty to receive offers and counteroffers and consequently, would not have a duty to present such offers and counteroffers to the seller.
¶ 27 The discussion regarding waiver of the statutory duties and responsibilities of transaction brokers relied upon above does not apply to single-party brokers. As to single-party brokers, the Legislature has provided at Section 858-354 of Title 59:
 A. A broker shall enter into a written brokerage agreement prior to providing services as a single-party broker, which shall be deemed to include, and which may not abrogate or waive, the mandatory duties and responsibilities set forth in this section.
Id. The "abrogate or waive" language in this section modifies the written brokerage agreement. Unlike the statute governing transaction brokers, this section provides that the written broker agreement may not abrogate or waive the mandatory duties and responsibilities. As a written broker agreement is necessary for all single-party broker transactions, neither party in a single-party broker relationship may waive the mandatory duties and responsibilities. This language is not critical to an analysis of your inquiry, however, as we have determined that accepting an offer or counteroffer is not a mandatory duty which a single-party broker is required to perform.
 A Buyer's Broker's Obligation to Be Available, Present Timely Offers and Counteroffers, and Exercise Reasonable Skill and Care Requires the Broker to Deliver an Offer from His or Her Client to a Seller, If the Listing Broker Refuses to Receive the Offer upon Instruction of the Seller.
¶ 28 You also ask whether a buyer's broker is required to deliver an offer from his or her client to a seller if the seller's listing broker refuses to receive the offer upon the instruction of the seller. The situation you present could occur where a broker is assisting a buyer by showing the buyer's real estate. The buyer and his or her broker find a property upon which the buyer wishes to place an offer. The buyer's broker draws up the offer and presents it to the seller's broker. However, the seller and the seller's broker have an agreement that the seller will receive offers directly. The seller's broker has agreed to perform only limited services such as listing the home on the master service list or showing the home to potential buyers. The seller's broker informs the buyer's broker that the seller is receiving offers directly.
¶ 29 In such a situation, a buyer's broker does not have a specific duty under the Code to present an offer to any particular person. However, both transaction brokers and single-party brokers have a duty to "be available to" timely present written offers and counteroffers. 59 O.S. Supp. 2005, §§858-353[59-858-353](A)(2), 858-354(B)(2) (emphasis added). We determined above that the broker is to be available in the sense that he or she is willing to be of assistance to the party represented. Thus, if a seller's broker informs the buyer's broker that the seller is receiving offers directly, a buyer's broker must be willing, if requested by the buyer, to present the offer directly to the seller. Brokers are also required to "exercise reasonable skill and care." Id. §§ 858-353(A)(1), 858-354(B)(1). Practically speaking, this would require a buyer's broker to deliver the offer to any party which would result in facilitating the transaction.
¶ 30 Additional duties exist with regard to single-party brokers. A single-party broker has a duty to "perform all brokerage activities for the benefit of the party for whom the single-party broker is performing services unless prohibited by law[.]" Id. § 858-354(B)(7). The single-party broker has an additional duty to "obey the specific directions of the party for whom the single-party broker is performing services that are not contrary to applicable statutes and rules or contrary to the terms of a contract between the parties to the transaction[.]"Id. § 858-354(B)(9). Under these provisions a single-party broker would be required to present an offer to a seller if the buyer directed the broker to do so.
¶ 31 Perhaps the more troubling situation occurs when the buyer's broker delivers the offer directly to an unrepresented seller and the seller asks questions of or seeks assistance from the buyer's broker in facilitating the transaction. The Code provides that a "broker assisting the other party in the transaction is not required to provide assistance with these steps in any manner." 59 O.S. Supp. 2005, §§ 858-353[59-858-353](D), 858-354(F). These steps refer to steps involved in completing a transaction. Under this authority, a buyer's broker who presents an offer or counteroffer to a seller on behalf of a buyer is not required to assist the seller in any manner, regardless of whether the seller is represented by a broker.
¶ 32 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The 2005 amendments to the Oklahoma Real Estate License Code, 59 O.S. 2001 and Supp. 2005, §§ 858-101 through 858-732, amending the duties and responsibilities of real estate brokers, do not prevent the seller in a real estate transaction from receiving offers and counteroffers directly.
 2. Title 59 O.S. Supp. 2005, §§ 858-353(A)(2) and 858-354(B)(2) providing that a broker must "be available to" receive offers and counteroffers, do not require a listing broker, whether a transaction broker or a single-party broker, to receive written offers and counteroffers from a buyer or a buyer's broker if the seller has instructed the listing broker the seller wants to receive offers directly and does not want to go through the listing broker.
 3. Title 59 O.S. Supp. 2005, § 858-353(A) allows a seller in an agreement with a transaction broker to waive the mandatory duties and responsibilities imposed by statute upon transaction brokers. This waiver does not apply to single-party brokers, 59 O.S. Supp. 2005, § 858-354(B), but is not relevant to your questions as we have concluded there is no mandatory duty for a transaction broker or a single-party broker to receive offers and counteroffers.
 4. As a broker has a duty pursuant to 59 O.S. Supp. 2005, §§ 858-353[59-858-353] and 858-354 to "be available to" present written offers and counteroffers and to "exercise reasonable skill and care" a buyer's broker is required, if requested by the buyer, to present offers directly to a seller. Additionally, a single-party broker is required to "perform all brokerage activities for the benefit of the party for whom the single-party broker is performing services unless prohibited by law" and "[t]o obey the specific directions of the party for whom the single-party broker is performing services that are not contrary to the applicable statutes and rules or contrary to the terms of a contract between the parties to the transaction[.]" Id. § 858-354(B)(7), (9). These statutes would require a buyer's broker, if requested by the buyer, to present an offer directly to a seller.
 5. A broker who presents an offer to an unrepresented seller on behalf of a buyer is not required to assist the unrepresented seller with any steps in a real estate transaction. 59 O.S. Supp. 2005, §§ 858-353(D), 858-354(F).
W.A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA D. RINEHART Senior Assistant Attorney General
[1] Section 858-358 referred to in Section 858-353(B), applies to the duties of a broker after termination, expiration or completion of performance of the transaction.
[2] Title 59 O.S. 2001, § 858-312[59-858-312](8) provides causes for suspension or revocation of a license and includes "[a]ny other conduct which constitutes untrustworthy, improper, fraudulent, or dishonest dealings[.]"
[3] "`Bone fide offer' means an offer in writing." OAC:605-10-1-2 (2003).
[4] OAC 605:10-17-4 was implemented prior to the 2005 amendments to the Code and last amended July 11, 2003.