## BIRCH v. McNAUGHT.

No. 38. Opinion Filed May 12, 1909.

(101 Pac. 1049.)

**BROKERS—Real Estate Agents—Right to Commission.** A real estate agent authorized to sell the land of another for a stated price within a certain time for a certain compensation has not earned his commission until he produces a purchaser ready, willing and financially able to purchase the land upon the terms and conditions agreed upon.

(Syllabus by the Court)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by George W. McNaught against Alfred L. Birch. Judgment for plaintiff, and defendant brings error. Reversed and dismissed.

*Bradley & Bradley,* for plaintiff in error, cited: 23 A. & E. Enc. Law 906, 909, 921; *Butler v. Baker,* 17 R. I. 582; *Wilson v. Mason,* 158 Ill. 304; *Mallott v. Downing,* 39 Or. 218; *Prout v. Chisholme,* 47 N. Y. Supp. 376; *Hoyden v. Grill,* 35 Mo. App. 647; *Alvard v. Cook,* 174 Mass. 120; *Hegenmyer v. Marks,* 37 Minn. 6.

*F. P. Whistler* and *J. P. Cummins,* for defendant in error.

TURNER, J. This is a suit by George W. McNaught, a real estate agent, to recover $161 commission alleged to have been

earned on the sale of a farm for Albert L. Birch to W. P. Datesman. There was trial to a court and judgment for plaintiff, from which defendant brought error. The question for our determination is whether the evidence is sufficient to support the judgment.

The material undisputed facts are: That in the spring of 1905 McNaught was a real estate agent in Kingfisher, O. T. That Birch owned the farm in question near that place but lived in Saskatoon, Northwest Territory, at which time Birch listed said farm for sale for $3,250 with McNaught, and also for the same price at the same time with one Stephenson, another real estate agent who lived in Kingfisher. That, failing to sell, Birch wrote as follows:

"Saskatoon, Canada, July 12, 1905. Mr. McNaught: Dear Sir: I want to give you a new price on my land, the N. E. 9, 15, 6 and S. E. 10, 15, 6. I will take $2,500.00 for either one of these places if taken inside of 90 days. Your commission to come out of the above price. We agreed before I left you were to have one dollar per acre for selling. I hope you will do your best to sell one quarter for me * * *"

—which he accepted and proceeded to make a sale. That in so doing he told one Frank T. Gee, who also lived in Kingfisher, all about it, who said that he would help him "land it" and in a few days returned and said he could sell the land for $2,500, and instructed McNaught to have the deed made out to W. P. Datesman, conveying him the N. W. ¼ of section 9, township 15 N., range 6 W., of the Indian Meridian. That thereupon McNaught telegraphed Birch as follows:

"To A. L. Birch, Saskatoon, N. W. T. Winnipeg, Man. 8/2, 1905, Sold northeast nine fifteen six. Twenty-five hundred. Forfeit up. Geo. W. McNaught."

And the next day but one mailed him a letter as follows:

"Kingfisher, O. T., Sept. 4, 1905. Mr. Alfred L. Birch, Saskatoon, Canada, N. W. T.—Dear sir: Following the telegram I sent you on Saturday last, I take pleasure of informing you that in accordance with your request of July 12, 1905, I have made sale of your home farm being the N. E. ¼ of Sec. 9, Tp. 15 R. 6 and herewith enclose deed transferring the same to purchaser thereof, namely, William P. Datesman, who will also write you a

personal letter. The consideration, for which this land is sold is twenty-five hundred and no/100 dollars. While the deed enclosed shows a consideration of thirty-five hundred dollars, the personal letter of purchaser will explain more fully. (Forfeit is in bank awaiting deed.) Yourself and wife will please sign and properly execute the enclosed deed before any court of record, or clerk of such court, or before any Consul of the United States, and return said deed to the First National Bank of Kingfisher, Oklahoma, with instructions to turn over to myself or said purchaser thereof on the payment of $2500.00 less $160 commission to be paid to myself less the incumbrance against the said land. I am sending you transfer of one-third of the crop, or your part. Also sign and return in accordance with your letter above mentioned. Yours very truly, George W. McNaught."

And at the same time inclosed a letter purporting to be from Datesman, but which he wrote himself in the absence of Datesman, and in the presence and at the suggestion of Gee, which Datesman was induced by Gee to sign without knowing its contents:

"Kingfisher, O. T., Sept. 4, 1905. Mr. A. L. Birch, Saskatoon, Canada—Dear Sir: I have purchased of George W. McNaught, of Kingfisher, Okla., the N. E. ¼ of nine, fifteen six, this county for $2,500.00 but I wish the deed to show a consideration of $3,500.00, for the reason that the value of said land hereafter will depend largely upon the present consideration as specified in this deed. Trusting that you will attend to this at once so that I can get possession as soon as possible, I am, Yours respectfully, W. P. Datesman."

That none of these representations to Birch concerning a purchase of the land by Datesman were true, and were known by McNaught and Gee to be false. That just prior thereto, Gee had been told by one Riley that he had agreed to buy said land through Stephenson, and give him $3,250 therefor. That thereupon Gee told Riley that Birch had listed the land with him for $3,000, at which price he would sell it to Riley and induced him to accept said offer and withdraw his forfeit of $500 on the deal with Stephenson and deposit it in bank to bind said bargain with Gee, which he did with the understanding that the purchase

money was to be paid to any one to whom Gee might direct on delivery of a good and sufficient deed to Riley. That Riley did not know Datesman and had no dealings with him, never agreed to buy any land from him, but was told by Gee that the deed would be taken from Birch in his name, but did not state why. That Datesman never had any dealings with McNaught, and never agreed with any one to buy the land, was never ready, willing, nor able to do so, but was acting for the accommodation of Gee in signing the letter to Birch, and agreeing that he would permit the deed to be made in his name. That McNaught did not know Riley or of his arrangement with Gee. That McNaught and Gee were not partners in the deal, but were acting independently, and the former had no interest whatever in what the latter was to get for the land over $2,500. Thus matters stood at the time said deed to Datesman was sent to Birch to sign, and so remained until the expiration of the 90 days. Not having heard from him, McNaught again wrote Birch on September 23, 1905, and, still not hearing, again on October 3, 1905, and with it inclosed a deed of similar import to the one first sent, with the consideration therein set forth at $2,500, with instructions to return it duly executed to the bank for delivery on receipt of said amount, less his commission and the amount of the incumbrance, and requested Birch that, if neither deed was satisfactory, to make, execute, and deliver one to him conveying the land, including one-third of the crop, to Datesman, and that the same be sent to the bank with abstract and instructions for closing the deal. The result of an exchange between them of several letters not necessary to set forth was that Birch refused to make the conveyance, whereupon McNaught brought suit to recover his commission for effecting a sale of said land to Datesman.

We are of the opinion that the judgment cannot be sustained. To entitle McNaught to recover, the burden of proof was upon him to show that he had found and produced a person who was ready, willing, and financially able to make the purchase of the property at the price within the time and upon the terms fixed

by Birch. 23 Am. & Eng. Enc. of Law, 914; *Lockwood v. Halsey,* 41 Kan. 166, 21 Pac. 98, and cases cited; *Davis v. Lawrence & Co.,* 52 Kan. 383, 34 Pac. 1051; *Neiderlander v. Starr,* 50 Kan. 770, 33 Pac. 592. This he failed to do. He does not claim that through Gee, his subagent, he sold the land to Riley, who on the trial swore that he was ready, willing, and able to carry out his contract with Gee, but that he produced such a purchaser in the person of Datesman, whom the proof shows was produced by Gee, and not as a purchaser of anything from anybody, but merely as one through whom to pass the title to Riley, and that McNaught and Datesman never had any dealings concerning the matter. That McNaught is uncertain as to how he made a sale to Datesman is apparent from his testimony:

"Q. Now, Mr. McNaught, why do you persist in saying that you have sold the land if you had never met Datesman, and had no talk with him? A. The land was sold to Mr. Datesman through his agent Mr. Gee. Q. What business was Mr. Gee in? A. Real estate business."

There is no testimony that McNaught sold the land to Datesman through Gee as his agent.

We are therefore of the opinion that Datesman did not buy or intend to buy the land through Gee, and, as the minds of Birch and Datesman never met in a sale and purchase of the property through McNaught as agent for Birch, that there is a total failure of proof that McNaught directly or indirectly produced in Datesman a person who was ready, willing, and financially able to make the purchase of the property upon the terms fixed by Birch, and for that reason was not entitled to recover.

The cause is therefore reversed and dismissed.

All the Justices concur.