## WALLACE v. ATKINSON *et al.*

No. 5144.   Opinion Filed November 9, 1915.

(152 Pac. 1094.)

1.   BROKERS—Commissions—Actions—Evidence. Evidence examined, and found not sufficient to support an allegation of conspiracy.

2.   SAME. Where real estate brokers and a landowner enter into a written contract, not exclusive, whereby the brokers are given three months' time to sell certain land and to have all over $14,000 therefor as commission, and where the brokers within the time procure a prospective purchaser, who will not give more than $14,000 therefor, and within a short time thereafter, where a brother of the prospective purchaser, whom the landowner, before entering into the contract with the brokers, promised to give an opportunity to buy the land, should he take a notion to sell, approaches the landowner and offers to buy the land for $14,000, and upon inquiry by the landowner he assures him that he was

acting in his own behalf and not for the prospective purchaser, and where the landowner in good faith believes and acts upon the proposition and conveys the land for $14,000, but it afterwards develops that the buyer made the deal with the intention of conveying the land to the proposed purchaser procured by the brokers, in event he would take it off his hands, and thereafter so conveys the land, all of which was without the knowledge, notice to, or connivance with the landowner, under such facts. the landowner is not liable to the brokers for $700, or any other amount, as commission, the $700 being the amount which the brokers would have made had the prospective buyer purchased at the price asked by the brokers.

3.    **SAME—Conditions Precedent.**  Under above state of facts, in an action for brokers' commission, before plaintiffs can recover, it is incumbent that they plead and prove that before the landowner procured a purchaser, they complied with the contract, in that they had procured a purchaser willing, ready, and financially able to buy at a price exceeding $14,000, which excess, under the contract, would be plaintiffs' rightful commission.

(Syllabus by Watts, C.)

*Error from District Court, Kiowa County;*
*James R. Tolbert, Judge.*

Action by John R. Atkinson and W. C. Atkinson against Robert S. Wallace. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*Thomas W. Conner* and *E. W. McIntosh,* for plaintiff in error.

*L. M. Keys,* for defendants in error.

Opinion by W.ATTS, C. The defendants in error sued plaintiff in error in the district court, Kiowa county. Parties will be referred to as they appeared there.

The petition charges that plaintiffs were engaged in real estate business in Gotebo; that defendant was the owner of a certain half section of land in the county, and on August 20, 1909, by written contract, listed the land with plaintiffs for sale at a net price of not less than $14,000, and agreed to hold the land at a selling

price in whatever amount above $14,000 plaintiffs might direct, the excess, in case of sale, to be the plaintiffs' commission; that on September 17, 1909, they found a purchaser, and took him to see the land, and said purchaser on the 20th day of September, 1909, offered $14,000 therefor; that on the following day, they informed defendant of their willingness to sell, provided defendant would reduce his net price below $14,000 in an amount so they could realize $700 as commission, which defendant refused to do; that prior to the attempted sale they had directed and defendant had orally agreed to hold the land for $15,000, and they at no time authorized a reduction of the price, except as just mentioned, and therefore the contract remained unchanged and intact; that on or about September 21, 1909, defendant, the prospective purchaser, Rudolph Haxton, and his brother Charles M., formed a conspiracy, whereby Charles M. was to purchase the land in his name for $14,000 with the funds of Rudolph, and for his use and benefit, the title to be in Charles M., in trust for the use and benefit of his brother Rudolph, thereby cheating and defrauding plaintiffs out of their commission of $700; that on the date last mentioned defendant, in furtherance of the conspiracy, sold and conveyed the land for the sum of $14,000 to Charles M. for the use and benefit of Rudolph, as above charged; that by reason of the reduction of the selling price below $15,000, the conspiracy, and the sale, as mentioned, they had been damaged $700, praying judgment for said sum and costs. The contract is attached to and made a part of the petition. It reads:

"For and in consideration, etc., ＊ ＊ ＊ I, R. S. Wallace ＊ ＊ ＊ do hereby appoint Jno. R. Atkinson

Wallace v. Atkinson et al.

\* \* \* my true and lawful agent, giving him the right to price and sell the following described, etc.: \* \* \* Provided, however, that the price shall not be less than $14,000.00 which amount shall be the net price to me: I hereby contract and agree that the said agent shall have for his compensation all of any additional amount that may be received over and above the aforesaid net price. \* \* \* I also contract and agree to hold above land at any price which said agent authorizes. \* \* \* This contract shall remain in full force and effect for a term of three months from date hereof. \* \* \* In witness, etc., 20th day August, A. D. 1909. [Signed] Robt. S. Wallace."

The answer, so far as material, was a general denial. After the conclusion of the evidence and instruction of the court, the jury returned a verdict for plaintiffs for $307.50. The motion for new trial was denied and defendant appeals, assigning error: (1) In overruling the demurrer to the petition; (2) in admitting incompetent evidence; (3) in overruling demurrer to the plaintiffs' evidence; (4) in refusing and ruling out competent evidence; (5) in rendering judgment on the verdict; (6) in overruling motion for new trial.

The law governing real estate brokers' commission has many difficult and perplexing angles. To harmonize and dove-tail all that has been judicially written thereon, evolving one infallible rule not in some respects justly subject to criticism and exception, seems almost hopeless. What would seem a just and equitable rule under one state of facts is wholly upset and without application under a different state of facts. A review of the decisions will show this court has had its share of the difficulty. Therefore, mindful thereof, we will not enter into a lengthy discussion, attempting to harmonize all

that has been said, but will content ourselves near the water's edge and decide the law as applicable to the case at bar.

Without discussing each of the assignments, we think the trial court, committed error in overruling the demurrer to the plaintiffs' evidence. The evidence does not sustain the judgment of the court. Before the plaintiffs were entitled to recover they should have alleged and proven that they had performed their part of the contract in procuring a purchaser willing, able, and ready to buy. In this respect the evidence is unquestionably against plaintiffs. We quote from their brief the evidence which they claim supports their contention:

"W. C. Atkinson testified as shown on page 56 of record as follows: Q. What, if anything, was said between yourself and Rudolph Haxton with relation to his buying this land? A. Mr. Rudolph Haxton was interested in the land and told me he was, but in a short time he came into town, and he and I got to talking about the land, and the Newby boys wanted the quarter, and Mr. Wallace wanted half a section, and Mr. Haxton told me he would take it at the net price. He didn't want to pay the commission if he could help it. I says, 'I can get some concessions out of the Newby boys, but I don't think I can get any out of Mr. Wallace.' He says, 'Mr. Wallace is, I understand, at Chickasha after some cotton pickers, and if he comes in tonight I'll see him in the morning and then see you.' I understood he aimed to buy the land. Q. And if he could reduce the price 2½ per cent? A. I intended to get Mr. Haxton to pay the other 2½ per cent. Q. But you had told him the net price was fourteen thousand? A. I had, and showed him the contract. Q. You say he said he would see Wallace? A. He said if Mr. Wallace came in that night he would see him next morning, and then see me. Q. You had an understanding to go to Wallace and buy

this land? A. That was the understanding I had with him, that I just repeated. Q. That was that he should buy this land of Mr. Wallace? A. He said he would see Mr. Wallace next morning if he came in that night and then see me—those were the words he spoke, as near as I can recall them."

On page 85 of the record is shown the testimony of Rudolph Haxton on this subject, as follows:

"A. Yes, sir; I had the money then—I settled up for my land in Iowa then. Q. In this talk with Calvin Atkinson, as you call him—at the time you made the offer of $14,000 for the land, I will ask you if you had a conversation something like this: For him to see Mr. Wallace and see if he couldn't get Mr. Wallace to reduce his price below the $14,000 enough so Mr. Atkinson could get his commission, and you would see him? A. I don't know—I might have said that—I don't mind just when I —whether I did or not. Q. Would you have given him more than that? A. No, I didn't want to give him more than the fourteen thousand. Q. Well, would you have done it? A. I don't know as I would."

In our judgment this evidence does not meet the requirements of the law. The burden being upon plaintiffs, they were in duty bound to show wherein they suffered. The evidence is uncontradicted that a written contract was entered into as herein set out; that within the time mentioned in the contract the plaintiffs procurred Rudolph Haxton, a prospective purchaser, who offered $14,000 for the land, but would not give more; that within a short time thereafter, Charles M. Haxton, a brother of Rudolph Haxton, approached the defendant, offering to buy the land at $14,000; that prior to entering into the contract with the plaintiffs, the defendant had promised Charles M. Haxton that in the event he took a notion to sell the land, he would give him an op-

portunity to buy same; that the defendant inquired of
Charles M. Haxton as to whether he was buying the land
for himself, and whether his brother Rudolph Haxton
was interested in the deal, and was assured by Charles
M. Haxton that he was acting in his own behalf, and not
for Rudolph Haxton; that plaintiffs endeavored to get
the defendant to cut his net price in a sum that would
give them a commission of $700, which he refused to do;
that plaintiffs could not have sold the land to Rudolph
Haxton for more than $14,000; that the defendant acted
in good faith, and believed that Charles M. Haxton was
buying the land for himself and that his brother, Rudolph
Haxton, was not interested therein, and accordingly
executed a deed in favor of Charles M. Haxton, and
placed same in escrow, and that Charles M. Haxton,
within a short time thereafter, executed and delivered
a deed to the land to Rudolph Haxton; that in truth and
fact Charles M. Haxton bought the land with the inten-
tion of conveying the same to Rudolph Haxton, in the
event that Rudolph desired to take it off his hands, but
that the intention of Charles M. Haxton, just mentioned,
was without knowledge, consent of, or connivance with
the defendant.

Under the pleadings and this state of facts, plaintiffs
could not have been damaged for lost commission. We
therefore hold there was no evidence of a conspiracy,
and before the plaintiffs were entitled to recover, it was
incumbent that they plead and prove that before the
landowner procured a purchaser they complied with the
contract, in that they had procured a purchaser willing,
ready, and financially able to buy at a price exceeding
$14,000, which excess under the contract would have been

plaintiffs' rightful commission. In *Birch. v. McNaught,* 23 Okla. 634, 101 Pac. 1049, the rule is announced:

"A real estate agent, authorized to sell the land of another for a stated price within a certain time for a certain compensation, has not earned his commission until he produces a purchaser, ready, willing, and financially able to purchase the land upon the terms and conditions agreed upon."

See, also, *Crutchfield v. Webster et al.,* 31 Okla. 142, 120 Pac. 615; *Bleecker v. Miller et al.,* 40 Okla. 374, 138 Pac. 809; *Everett v. Combs,* 40 Okla. 645, 140 Pac. 152.

*Quist v. Goodfellow,* 99 Minn. 509, 110 N. W. 65, 8 L. R. A. (N. S.) 153, 9 Ann. Cas. 431, is very similar in facts to the case at bar, and the broker was held not entitled to commissions.

Therefore, for the reasons mentioned, we recommend that the judgment of the trial court be reversed, and new trial granted.

By the Court: It is so ordered.