## J. L. LEMMON CO. v. OPPENHEIMER.

No. 20571. Opinion Filed Feb. 9, 1932.

Rehearing Denied March 1, 1932.

210

J. J. Henderson, for plaintiff in error.

Geo. S. Ramsey, Edgar A. de Meules, and Garrett Logan, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Tulsa county in favor of the defendant in error, the defendant in the trial court, against the plaintiff in error, the plaintiff in the trial court. The parties hereinafter will be referred to as plaintiff and defendant.

The plaintiff sought to recover a judgment against the defendant for money alleged to be due to him as compensation for his services in selling certain real estate which belonged to the defendant. The answer was a general denial. At the conclusion of the evidence of the plaintiff, the defendant demurred thereto and that demurrer was sustained. The cause was dismissed by order of the court, and the plaintiff appealed to this court. Six assignments of error are presented by him under one proposition as follows:·

"The principal question in this appeal is, Has the plaintiff shown by his evidence a contract for commission and does his evidence support the allegations of his petition."

The plaintiff alleged an oral contract with the defendant as follows:

"That on or about March 1, 1928, and for sometime prior thereto, defendant listed the following described property with the plaintiff for sale or exchange and agreed to pay him the regular commission of 5% per cent. on the first $10,000 of the consideration thereof, and 2½% on the balance of the consideration to find him a customer for said property, and fixed his price at $28,000, to wit: Lots 19 and 20 in block three (3), Orchard addition to the city of Tulsa, Tulsa county, Okla. Which agreement was oral. The said listing of said property with plaintiff for sale or exchange, was exclusive to plaintiff"

—and the performance thereof by him as follows:

"Plaintiff further shows that on or about March ——. 1928, he found a customer for defendant for his said property who was willing and able to purchase said property upon terms and price acceptable to defendant: that he immediately communicated this to the defendant who resided in New York and the defendant came to Tulsa, and took up the further negotiations with plaintiff's said customers, to wit: Hattie Belle Coleman and Lindsey Coleman and the defendant returned to his home in a short time thereafter and continued his negotiations with plaintiff's said customers, and did. on or about July 20. 1928. close his said deal with the said Hattie Belle Coleman and Lindsey Coleman, plaintiff's said customers."

In support of his allegation as to the contract. he testified. in substance, that he was a real estate broker: that one J. P. Flanagan came to his office and asked him to handle some property for a friend in New York City; that he told Flanagan that he·

would do so and that he would charge a commission of 5 per cent. on all rentals collected for his handling of the property, but that he would have to have exclusive right to the sale of the property as a condition for his handling the rental thereof; that Flanagan agreed thereto and stated that he would notify the defendant, who was the owner of the property and that he received a letter from the defendant in which he stated, in part, "I have at hand a letter from Mr. J. P. Flanagan relative to the property which I own in Tulsa, which has been placed into your hands as agent." The letter referred to did not state whether the plaintiff was to be the agent to rent or to sell the property, or both. There was nothing therein as to the plaintiff being an exclusive agent to sell the property. There is nothing in the record to show that the plaintiff had an exclusive right to sell the property or that anyone in authority had agreed that he should have such exclusive right. There is nothing in the record to show that the defendant knew that the plaintiff was claiming exclusive right to sell the property.

As to the commission to be paid for the sale of the property, the plaintiff testified that he had no agreement with Flanagan, or anyone else representing the defendant, as to what commission he was to receive for the sale of the property. He testified that when the defendant came to Tulsa to see about the sale of the property, he had a conversation with him in which the defendant asked him what his commission would be for the sale and that he told the defendant that his commission would be 5 per cent. on the first $10,000 and 2½ per cent. thereafter. There was no proof as to what the 5 per cent. and 2½ per cent. commission was to be based upon, that is, whether it was to be based upon the value of the property sold, the price for which the property was sold, if sold for cash, or the value of the property traded, if an exchange of property was made. The plaintiff alleged that the 5 per cent. and 2½ per cent. commission was to be on the consideration for the property; that it was for finding the defendant a purchaser for the property, and that the price fixed by the defendant for the property was $28,000. There was no proof to sustain the allegation that the plaintiff's duty was merely to find a purchaser for the property. There was no proof as to what duties were to be performed by the plaintiff.

In Hopkins v. Settles, 46 Okla. 801, 149 P. 890, this court held:

"Questions arising out of a claim by a real estate broker for commissions or compensation generally depend upon the contract or understanding between him and the owner, under which the broker acts. The owner has the right to stipulate that he will not pay, or be in any way obligated to pay, for services in relation to the sale of his land, except in the event such sale is fully and finally consummated."

In Winemiller v. Matthews, 125 Okla. 219, 257 P. 291, a case where the facts were similar to those herein, this court said:

"In an action by a broker to recover commissions on the sale of an oil and gas lease, where the basis of the action is an express oral contract, definite and certain in its terms and conditions, performance by the broker of the express terms and conditions of the contract is necessary to be shown as a prerequisite to a right of recovery. * * *

"Where several brokers are seeking to bring about the sale of the same property, none of them having an exclusive contract with the seller, the broker who induces the seller and purchaser to enter into the deal, and whose efforts are the direct and proximate cause of the sale, is entitled to the commission even though another broker may have first informed the purchaser that the property could be purchased. (Nation v. Harness, 33 Okla. 630, 126 P. 799.)"

In King v. Stephenson, 29 Okla. 29, 116 P. 183, this court held:

"Where plaintiff, a real estate agent, brings an action for commission alleged to have been earned on the sale of land and relies upon a special contract, he cannot recover upon quantum meruit, and it is error to admit evidence establishing the same and to instruct the jury that it may return a verdict in a sum customary for services shown to have been rendered"

—and said:

"And, where plaintiff declares upon an express contract, he must, except in those cases where on the introduction of evidence by consent a departure is permitted, succeed or fail upon the issue which he thus tenders."

As to the performance of the contract by the plaintiff, he testified that he found a purchaser for the property; that he notified the defendant in New York City, and that the defendant came from New York City to Tulsa and inspected the property offered in exchange, and said, "I am ready to trade on those terms." He further testified:

"* * * I immediately called Mrs. Coleman and told her that Dr. Oppenheimer was ready to accept that option, and Mrs. Coleman said, 'Well,' says, 'I want to go through with it, but,' says, 'My husband is about backing out on me.' says, 'I want to make the deal myself.' And I told her, I says,

'Mrs. Coleman.' I says, 'You put Doctor in an awful imposition, getting him down here, and agreeing to this option, and then backing out after he has came down.' She says, 'Well,' she says, 'I am perfectly willing to go through with it, but' says, 'My husband doesn't want to go through with the deal'; says, 'We have got something else that we like better.' I talked to her, 'Well,' she says—'Well,' she says, 'My husband is leaving town'; says, 'If you can overtake him,' says, 'I believe you can get him to make the deal yet.' Q. Well, then what was the next proceedings in the transaction? A. Well, Dr. Oppenheimer came out to the office very much peeved over the fact that they were not going to take their option, and told me that he was going down town and employ a lawyer and sue them, for getting him down here, which I understand he did—write them a letter."

He introduced a copy of a letter which he wrote to the defendant, which, with formal parts omitted, is as follows:

"Very sorry to have missed you Tuesday evening, but was of the opinion that you had left for New York on Monday night.

"Shortly after you left here Monday afternoon for Bartlesville, Mrs. Coleman's son called me to say that Mr. Coleman was on his way out of the city and that Mrs. Coleman had left also attempting to overtake him before he got away and to urge him to go thru with the deal. She left word that she would call me that evening so I waited in the office until 9:30 thinking she would call or that I would hear from her. I didn't get to talk to her until a short time ago and then could get no satisfaction from her whatsoever. She did not mention having received a letter from your attorney, neither did I mention the fact as I thought probably you would have your attorney mail me a copy of the letter. However, in our conversation she stated in case you decided to sell at a lower figure she would be glad to talk to me but I informed her she had the best proposition she would ever be able to obtain.

"This is all the information I am able to give you at this time, but will keep you posted from time to time regarding the matter and trust we will be able to work out a more satisfactory deal next time"

—and he offered in evidence the letter received by him from the defendant, which, with formal parts omitted, is as follows:

"Please send me per return mail statement for June re apartments. As I am leaving for abroad shortly please send monthly statements hereafter to Mr. Flanagan, whom I have advised to look after matters, & oblige."

Across the top of that letter was written: "Was in hopes you would have sold apartment ere this."

That evidence is insufficient to support the allegation in the petition that the plaintiff had found a purchaser "who was willing and able to purchase said property upon terms and price, acceptable to defendant." It shows the contrary.

The issues were made in this case by the pleadings. The cause was tried on the issues so made. There was no issue of quantum meruit. The plaintiff in its brief said, "We alleged a specific contract and we proved it just as we had alleged. * * *" The record does not show that the plaintiff proved the existence of the contract alleged or the performance thereof.

The plaintiff at no time found a purchaser who was ready, willing and able to purchase this property for $28,000, the price fixed by the defendant. He found a customer who made a proposition for exchange of properties. He presented that proposition to the defendant and the defendant accepted the same, but the customer that he had found was not a purchaser and refused to purchase or to take the property in trade for property. Thereafter he wrote the defendant a letter, concluding as follows, "trust we will be able to work out a more satisfactory deal next time." It is evident therefrom that he considered the transaction at an end. There is nothing in the record to show that the property was sold for $28,000, or traded upon the terms submitted to the defendant by the plaintiff.

The opening statements of the counsel for both the plaintiff and the defendant show that the property was thereafter sold by the defendant to the customer with whom the plaintiff had been negotiating, by a real estate agent by the name of Renfro, who, in the language of the attorney for the plaintiff, "got in touch" with the defendant by mail by a letter inquiring of the defendant if he would not sell the property. The terms of the sale and the consideration therefor are not shown by the record.

In Bunnell v. Frederick, 123 Okla. 222, 253 P. 56, this court held:

"If a real estate broker accepts employment which makes his right to compensation dependent on procuring a purchaser on specific terms, he cannot recover if he does not perform that service."

Also, in Winemiller v. Matthews, supra, this court said:

"Plaintiff, having deliberately chosen and stated the language of the conditions which he bound himself to perform, must show a performance by him of some one or all of such conditions before he is entitled to compensation for services rendered under such express contract."

The plaintiff contends that it was not necessary for him to show that he had procured a purchaser who was ready, willing, and able to buy, for the reason that he showed that he opened the negotiations with the one who finally purchased the property from the defendant. In support of that contention he cites various authorities, none of which, in our opinion, are controlling as to the issue presented here. Those cases relate to causes wherein waiver, estoppel, quantum meruit, or other things, not pleaded in this case, make up the issue. There was no allegation here of waiver or estoppel. Since those issues were not presented to the trial court, they cannot be presented for the first time here. McIntire v. King, 98 Okla. 192, 224 P. 695.

This court has repeatedly held that:

"Where a cause has been submitted to the trial court upon a particular theory, and from the judgment rendered appeal prosecuted to the Supreme Court, neither party will be allowed to change the theory of his case and present it here on a different theory than the theory upon which it was presented to the trial court." Security Nat. Bank of Tulsa v. Cain, 126 Okla. 202, 259 P. 572.

See, also, Kurz v. Stafford, 135 Okla. 121, 274 P. 674, and Herbert v. Wagg, 27 Okla. 674, 117 P. 209.

The plaintiff further contends that, when the defendant made the sale or trade to the purchaser procured by the plaintiff, the plaintiff was the procuring cause of the sale and was entitled to his commission, and cites Roberts v. Markham, 26 Okla. 387, 109 P. 127, and Birch v. McNaught, 23 Okla. 634, 101 P. 1049. We are unable to see what benefit the plaintiff can have by the holding in those decisions. While the plaintiff procured as a prospective buyer the one who later bought or traded for the property, it does not necessarily follow that he procured the purchaser. There was no exclusive right given to the plaintiff to sell. Where there is no exclusive agency, the same prospective purchaser may be presented to the owner by a number of agents. The agent who makes the sale, and not the one who first presents the prospective purchaser, in the absence of exclusive agency, is entitled to a commission for making the sale. The owner of the property is not required to pay a commission to some one who finds a prospective buyer, but who is unable to induce that prospective buyer to purchase. There is nothing in this record to show that the plaintiff was the procuring cause of the sale. The plaintiff tried to sell the property. He was unable to do so. He wrote the defendant that he trusted that he would be able to work out a more satisfactory deal the next time. He did not know that the sale had taken place until he was asked to transfer the insurance on the property. He said, "Plaintiff is not advised, and does not know, upon what terms and what price the defendant closed his said deal. * * *"

In Cantrell v. McLemore, 119 Okla. 176, 249 P. 417, this court held:

"If the broker fails to bring the minds of the parties to an agreement and the transaction is abandoned, and afterwards the owner, through his own efforts, without fraud, effects a sale, the broker is not entitled to a commission because he is not the procuring cause of the sale.

"A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite time, unless he is granted one or the other in express terms; and in the absence of such a grant the owner may, independent of the broker, sell either through his own efforts or those of another without liability to the broker."

The plaintiff contends that the trial court erred in dismissing the petition when the demurrer to the evidence had been sustained. That contention is entirely without merit.

We agree with the view taken by the trial court that there was nothing to submit to a jury and that the demurrer of the defendant to the evidence of the plaintiff should have been sustained.

For that reason, the judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY. HEFNER, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.

Note.—See under (1) annotation in 44 L. R. A. 605; 20 A. L. R. 290; 4 R. C. L. 297, 303; R. C. L. Perm. Supp. pp. 1104, 1107; R. C. L. Pocket Part, title Brokers, §§ 42, 46. (6) annotation in 44 L. R. A. (N. S.) 1142; 64 A. L. R. 395; 4 R. C. L. 259; R. C. L. Perm. Supp. p. 1092; R. C. L. Pocket Part, title Brokers, § 12.