Bob GRAHAM, Plaintiff in Error,

v.

C. M. BISHOP, Defendant in Error.

No. 40856.

Supreme Court of Oklahoma.

April 25, 1967.

William Bishop, Seminole, for plaintiff in error.

Horsley, Epton & Culp, Wewoka, for defendant in error.

### PER CURIAM:

The parties appear in this Court in the same relative position as in the trial court, and will be referred to herein as they appeared in the court below.

Plaintiff, Bob Graham, is a Real Estate Broker with offices in Oklahoma City. Defendant, C. M. Bishop, resides in Seminole County, Oklahoma, and owned the ranch in that County, the sale of which is involved in the controversy herein.

In conformity with the allegations of his petition, Plaintiff testified that on February 6, 1962, he visited with Defendant at Defendant's ranch and there entered into a Broker's Contract with the Defendant for the sale of the ranch, and that the contract was evidenced in writing on a card with printing on both sides, interspaced with blank spaces to be filled for certain pertinent items. This card contract was introduced in evidence and in the blank spaces there had been inserted handwritten items including the sale price as "$62,500.00 net to the owner", and the commission as "all over $62,500.00", and "90" was written into the blank space provided for the number of days of the exclusive listing. The hereinabove quoted handwritten items inserted in the blanks were filled in by the Plaintiff, in the

Defendant's presence, on said date when the agreement was entered into. Plaintiff testified that about the time of the expiration of said 90-day period, the Defendant orally agreed to extend the exclusive listing to August 6, 1962, and that the Defendant had orally agreed to a reduction of the sale price to $57,500.00 gross. The card contract contains handwritten notations of the alleged extension and of the alleged reduced sale price, which changes or additions were made on the card by Plaintiff in his Oklahoma City office in the absence of the Defendant, to represent items to which the Plaintiff claims the Defendant orally agreed.

The pertinent portion of the printed provisions on the contract card for the period of the exclusive listing is as follows:

"* * *

"a period of _____ days from this date, and thereafter until notified by me in writing."

As hereinbefore stated, the number "90" was by handwriting inserted in the foregoing blank space. In this connection it would appear that both parties regarded 90 days as the full period of original listing—evidently considering the handwritten 90 as superseding the following printed provision for extension of the listing until written notice served on agent. In this regard, it is to be noted that Plaintiff's petition alleged the original listing as "* * * a period of 90 days from date within which to sell the farm." The petition further alleged "* * * the Defendant orally agreed for Plaintiff to have an extension to 6 August 1962 within which to sell the property." Plaintiff also testified to the alleged oral extension and said he showed the property "* * * in July just not too long before the listing expired * * * on August the 6th." Plaintiff's own pleadings and testimony would justify a conclusion that said printed provisions to the effect that the listing continued until cancelled in writing was superseded and of no effect—otherwise there would have been no necessity or occasion for the alleged oral extension.

The contract card contained printed provisions to the effect that if the owner himself made a sale of the property during the listing period, that the Broker's commission would be the regular commission adopted by the Oklahoma City Real Estate Board. Plaintiff testified that the Broker's commissions specified by said Board were 7% for sale of rural property and 6% for sale of city property.

Plaintiff further claims that about the 8th of August, 1962, or shortly after the expiration of the alleged oral extension, the Defendant sold the ranch for $53,000.00 to one Paul C. Smith, to whom Plaintiff claims to have introduced the Defendant during the original 90 days listing period. Plaintiff in his petition and in his testimony sought recovery of $3,710.00, being 7% of the $53,000.00 sale price.

Defendant, in testifying, denied having granted an extension of the original 90-day period, and further denied having authorized the Plaintiff to sell the ranch for a reduced purchase price, and further denied having any knowledge of the alleged extension or price reduction notations inserted on the contract card. He testified that on February 6, 1962, when he signed the card, the Plaintiff took it with him to Oklahoma City and he, the Defendant, never saw the card again until after the institution of the suit. Defendant denied that the Plaintiff's efforts resulted in the sale and testified in detail as to his own actions in effecting the sale on new and entirely different terms—namely $53,000.00. Evidence was submitted on behalf of Defendant that Plaintiff did not introduce the Defendant to Smith until after the 90 day period written on the original contract had expired.

■■■■ The verdict of the jury was for the Defendant. For reversal, Plaintiff asserts two Propositions as follows:

"1. The refusal of the trial court to give Plaintiff's Requested Instructions Nos. 1, 3, 5 and 6.

"2. The giving of the trial court's Instruction No. 6."

Plaintiff's Requested Instructions Nos. 1 and 3 are as follows:

"1. You are instructed that under the law of Oklahoma, a real estate broker is entitled to a commission when he procures a customer with whom the principal makes a valid contract of sale or exchange. If you therefore find that Bob Graham procured Paul Smith as a customer and that C. M. Bishop made a valid contract for sale with Paul Smith, you must find for the Plaintiff.

"3. You are further instructed that where the owner sells to a purchaser procured by the broker, the broker need not prove the ability, readiness and willingness of the purchaser, to purchase, or that the terms were satisfactory."

Each of said Requested Instructions Nos. 1 and 3 was silent as to any contract existing between Plaintiff and Defendant—a question in issue and one for the jury to decide. See Harris v. Owenby, 58 Okl. 667, 160 P. 596. Furthermore, the matters apparently sought by Plaintiff in his said Requested Instructions Nos. 1 and 3 are adequately covered by other instructions given by the court, and particularly No. 4 and No. 5 of the court's Instructions, which are as follows:

"No. 4. You are instructed that where an agent for a stipulated commission undertakes to sell certain property at a given price, in pursuance thereto brings a sellor and buyer together, he is entitled to such commission, even though the sellor accepts a lesser sum than that so designated as the bases of the sale.

"No. 5. You are instructed that under the laws of this State a broker will be regarded as the procuring and efficient cause of sale if his efforts are the foundation upon which negotiations resulting in sale are begun. Therefore, if you find by a preponderance of the evidence that plaintiff's efforts were the foundation upon which negotiations resulting in the sale of the property involved in this lawsuit were begun, you must find for the plaintiff."

■ Plaintiff's Requested Instruction No. 5, among other things, would have instructed the jury that the Plaintiff's exclusive listing under the original card contract was continuous until Defendant notified Plaintiff in writing that the listing had been cancelled. The giving of such an instruction would have not been justified by the record and would have varied with Plaintiff's theory that the original listing for 90 days had been orally extended until August 6, 1962. As hereinbefore indicated, if the original exclusive listing had been continuous until cancelled in writing, there would have been no occasion for obtaining the alleged oral extension. Plaintiff's requested instruction would have been tantamount to an instruction that Plaintiff had an exclusive listing on the property when the same was sold for the reason there was no evidence submitted and Defendant did not defend the action on the grounds that he had given written notice of the termination of the contract. The trial court did instruct that before the contract, either oral or written, was binding on either party, there had to be a meeting of the minds concerning the terms of the contract and that the written portions of the contract govern over the printed portion of the contract, and Plaintiff did not object to such instruction.

■ Plaintiff's Requested Instruction No. 6 was to the effect that if the jury found the exclusive listing contract in force at the time the purchaser and Defendant were brought together, and that the Plaintiff was instrumental in bringing them together, that the verdict should be for the Plaintiff even if the sale be consummated after the expiration of the brokerage contract. If there was any error in failing to give Plaintiff's Requested Instruction No. 6, such error was cured by the Court's Instruction No. 5 hereinbefore quoted.

Instruction No. 6 given by the court, and objected to by the Plaintiff, is as follows:

"If you find for the Defendant you will return a verdict for the Defendant. If you find for the Plaintiff you will return a verdict in the sum of $3,710.00, the amount sued for."

Plaintiff complains of this instruction as not authorizing the jury to return a verdict in his favor for less than the full amount sued for. However, it should be noted that the Plaintiff's action is for a fixed definite sum, namely $3,710.00, which is, as Plaintiff testified, 7% of the actual sale price, the commission for selling rural lands under the Oklahoma City Real Estate Board, referred to in the printed provisions of the card contract. In seeking recovery herein, Plaintiff relied upon a special contract, under which his recovery, if any, in this case would be exactly the amount sued for and testified to by Plaintiff, no more and no less. Said Instruction No. 6 by the court was proper. In this connection see J. L. Lemmon Co. v. Oppenheimer, 155 Okl. 209, 8 P.2d 679, wherein the rule is stated in the third syllabi by the Court as follows:

"Where a real estate agent brings an action for a commission alleged to have been earned by the sale of real estate and relies upon a special contract, he cannot recover upon quantum meruit."

In this connection see also Rose v. Oehme, 200 Okl. 207, 192 P.2d 641.

■■ A careful examination of the record discloses that the instructions in their entirety fairly submitted the issues to the jury, and it does not appear probable that the rights of Plaintiff were prejudiced by any alleged error in the instructions. Accordingly, the verdict and judgment thereon should stand. In this connection see Guffey v. Towery, Okl., 388 P.2d 490, wherein the rule is stated in the first paragraph of the syllabi by the Court as follows:

"1. Instructions must be viewed in the light of the evidence upon which they operate and of the instructions as a whole. When thus considered, if it does not appear probable that the rights of the complaining party in the appeal were prejudiced by alleged errors in the instructions, a verdict against said party will not be set aside on account thereof."

In the body of the opinion the Court states:

"Although an instruction standing alone may be subject to criticism, if instructions in their entirety, fairly submit issues to a jury the giving of such instructions is not reversible error where it does not appear that the jury has been misled thereby. See Bowring v. Denco Bus Line, 196 Okl. 1, 162 P.2d 525. The possible deficiency of instruction No. 8 appears to have been met by other instructions."

In this case there was a conflict in the testimony concerning material items involved. The matter was submitted to the jury under instructions which were proper, and therefore the verdict and judgment based thereon should not be disturbed.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, BLACKBIRD, BERRY, LAVENDER and McINERNEY, JJ., concur.

WILLIAMS and HODGES, JJ., dissent.

The Court acknowledges the services of CARLAND E. SMITH, who with the aid and counsel of HENRY M. BEIDLEMAN and CHARLES L. PUGSLEY, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to Justice PAT IRWIN, for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

WILLIAMS, Justice (dissenting):

For the reasons hereinafter stated, it is my opinion that the trial court erred in failing to instruct the jury concerning the existence of an exclusive real estate contract.

The front side of the card contract involved herein provides as follows:

"EXCLUSIVE listing CONTRACT (adopted by the Oklahoma City Real Estate Board)

(Feb. 6)   19 (62)

To (Bob Graham Realtors)

I own property described on reverse side, and, in consideration of your advertising this property for sale, I hereby grant and give to you the sole and exclusive right to sell the same for a period of (90) days from this date, and thereafter until notified by me in writing.

"In the event it is sold by you, or myself, or by any other person during said time, for the price and upon said terms acceptable to me, then an in either of said events, in consideration of your listing and property and endeavor to sell the same, I promise and agree to pay the regular fixed commission as adopted by the Oklahoma City Real Estate Board. In the event said real estate is traded or exchanged for other property during said time, I promise to pay the usual exchange commission.

Owner (s/ C. M. Bishop)

The words and figures appearing in the body of the contract in parentheses were hand-written.

Plaintiff testified that he had advertised the ranch some 39 times, and had traveled several thousand miles in showing said property to 15 or 20 prospective purchasers, one of whom was Paul Smith. Concerning Smith, plaintiff testified that he showed the ranch to Smith on three different occasions, the first being in the latter part of April or the first part of May, with the other occasions being in early June and in late July, on the second of which occasions he introduced Smith to defendant. Plaintiff also testified that he had last advertised the property on July 31, 1962, and several days thereafter was informed orally by defendant that the listing would be terminated on August 6 as he (defendant) no longer wished to sell.

As noted in the majority opinion, defendant testified that he did execute the contract on February 6, 1962, but that the exclusive listing was only for a period of 90 days; "that I only read what he had written in there, the 90 days, that he had 90 days." He further testified that plaintiff had never requested an extension of the contract, but did, in July, 1962, request permission to show the ranch to Smith; that he granted such permission to plaintiff and at the time of such showing he first met Smith; that some time in early August, while he was standing on the street in Wewoka, he was approached by Smith who asked whether the ranch was still for sale; that he invited Smith to the ranch for the purpose of more closely viewing the premises; that Smith spent the night with defendant and that the following morning made an initial offer to purchase which resulted in the negotiations which ended in the sale to Smith for the price of $53,000.00. Defendant denied that he had phoned Smith at the latter's residence in Indiahoma on or about August 8 to inform Smith of the availability of the ranch and stated that Smith himself had made a call to Indiahoma on such date to speak with Smith's mother.

The deposition of Smith was introduced without objection, and, in brief summary, he testified that over a period of 3 to 4 years he had been shown a number of farms by plaintiff, several of which were located in Seminole County; that he first saw defendant's property in May, 1962; that in July, 1962, he again inspected said property and on this occasion first met defendant; that because of the necessity of first selling other property he owned in Comanche County, he was not ready, able and willing to purchase defendant's property until after August 1, 1962; that he subsequently happened to meet defendant in Wewoka, and upon learning that the ranch was still for sale, traveled there with defendant and again viewed the premises, and that he thereafter purchased the property for $53,000.00. Smith denied that defendant had ever telephoned him concerning the possible sale of the ranch.

On appeal, as the opinion of the Court noted, plaintiff contends that the trial court erred in refusing to give certain requested instructions. Among these requested and refused was plaintiff's requested instruction number 5. That instruction number 5, in brief summary, would have charged the jury that the exclusive listing contract could be cancelled only by written notice, and unless written notice was found to have been given, it must be assumed that the listing contract was still in effect at the time of the sale.

Although the above requested instruction is not as full as it might be, it is my opinion that a complete and proper instruction of similar effect should have been given to the jury.

This Court has previously held that it is the duty of the trial court to properly instruct upon the material and decisive issues involved in a case, and the failure to so instruct on such issues raised by the pleadings and evidence, constitutes reversible error. Phillips Petroleum Co., v. Price, Okl., 298 P.2d 772; International Harvester Co. v. Snider, 184 Okl. 537, 88 P.2d 606; Baumgart v. Bryant, 184 Okl. 531, 88 P.2d 635. To my mind, the question of the existence of an exclusive real estate listing at the time of the sale of the property involved herein is one of the decisive issues in the case. None of the instructions given by the trial court covered this issue. Rather the trial court instructed the jury to find for plaintiff if they found that he was the procuring cause of the sale. Under Oklahoma law, a broker with the exclusive right to sell property does not need to show that he is the procuring cause. Davidson v. Vandegrift, 292 F.2d 651 (10th Cir. 1961). In this case the card contract as above quoted provided for a commission to plaintiff even if defendant owner or anyone else should sell the place while the contract was in force and effect.

By its express terms, the listing contract granted to plaintiff the *sole* and *exclusive*

*right* to sell the property for a period of 90 days and *thereafter until terminated* in writing. The hand-written portion on the reverse side of the contract, referring only to sale price and commission based on such sale price, is in no way inconsistent with this explicit printed portion describing the term of the contract. Further, it is my opinion that plaintiff's alleged attempt to obtain a 90-day extension of the listing contract was not necessarily inconsistent with the contractual language providing that the listing remained in effect until terminated in writing. The original 90 days, as well as any extension thereof, provided a period during which the listing could not be cancelled except by mutual consent. Thereafter, as I read it, the contract remained in full force and effect but could be cancelled by defendant giving written notification thereof.

Therefore, if this listing were still in effect at the time of sale, plaintiff, as the holder of the sole and exclusive right to sell, was entitled to receive a commission.

However, in my view, the evidence submitted below does present some question as to whether the contract was still in force. Defendant testified, in effect that he intended to grant a listing of only 90 days. This parol evidence as to intent, although incompetent as varying the unambiguous language of the contract, 15 O.S.1961, § 155, was not objected to by plaintiff and must be given consideration since admitted into the record. 12 O.S.1961, § 424; Sanley v. Wilkerson, 107 Okl. 54, 229 P. 574; Jones v. Citizens State Bank, 39 Okl. 393, 135 P. 373.

Further, plaintiff testified that in early August, 1962, he was told by defendant that the listing would be terminated August 6, 1962. There was no evidence submitted below that plaintiff made any demand at such time that defendant comply with the terms of the contract and terminate the contract by giving a written notification. In my opinion, the requirement concerning written notice, unless waived, was a condition precedent to the termination of the contract. Bu-Vi-Bar Petroleum Corp., v. Krow, 40 F.2d 488, 69 A.L.R. 1295 (10th Cir. 1930).

Defendant argues, in effect, that for plaintiff to be entitled to receive a commission, he was required to fulfill the condition of the contract, i. e., to sell the property at a price of $62,500.00 net to defendant. I agree that where a broker contracts to procure a purchaser on certain terms he cannot recover unless he fulfills these express conditions. J. L. Lemmon Co. v. Oppenheimer, 155 Okl. 209, 8 P.2d 679. It is also my view that the evidence submitted below, to which no objection was made, as shown in the record presently before us, presents a question whether the intent of the contract was only to grant plaintiff the right to sell on certain specified conditions, or whether the intent was to grant the plaintiff the sole and exclusive right to sell the property.

Under the record presently before us, it is my opinion that the trial court should have instructed the jury properly concerning the fundamental issue of the continuation in existence of the listing contract at the time of the sale. If properly raised by the evidence submitted at a new trial, such instruction or instructions should also cover the matter of defendant's alleged intent and any waiver by plaintiff of written notice.

It is my opinion that the judgment below should be reversed and the cause remanded for new trial.

I respectfully dissent.

I am authorized to state that Mr. Justice HODGES concurs with the views herein expressed.