## BUNNELL v. FREDERICK.

No. 16156—Opinion Filed Jan. 19, 1926.

Rehearing Denied Feb. 8, 1927.

**1. Brokers—Compensation — Necessity for Performing Duty.**

If a real estate broker accepts employment which makes his right to compensation dependent on procuring a purchaser on specific terms, he cannot recover if he does not perform that service.

**2. Appeal and Error—Review—Conclusiveness of Findings.**

When a jury is waived and the issues,

both of law and fact, are submitted to the trial court, its findings will not be disturbed by this court, if there is any evidence reasonably tending to support the same.

### 3. Brokers — Compensation — Nonliability Where Negotiations Terminated.

If the principal and customer introduced by the broker cannot agree on the terms of the sale and the broker or his customer drops the negotiations or the principal withdraws its authorization, the broker is not entitled to a commission, on a sale being subsequently made by the principal, acting either independently or through another broker, to the same customer on different terms, where the principal acts in good faith and not for the purpose of depriving the broker of his commission.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Dan Bunnell, Jr., against A. L. Frederick. From judgment for defendant, plaintiff brings error. Affirmed.

Edward J. Fleming, for plaintiff in error.

H. R. Williams, for defendant in error.

Opinion by PINKHAM, C. This is an action instituted by Dan Bunnell, Jr., plaintiff in error, plaintiff in the court below, against A. L. Frederick, as defendant, to recover a broker's commission to which he is alleged to be entitled under a contract for the sale of a certain oil and gas lease.

The contract relied on, a copy of which is attached to plaintiff's amended petition, is as follows:

"August 1, 1923. Mr. Dan Bunnell, Jr., Tulsa, Okla. Dear Sir: Pursuant to our conversation regarding my lease of 175 acres in sec. 5, township 7 north, range 8 east, Hughes county, Okla., I beg to advise as follows: In case the trade you have made goes over at $75,000 for this acreage, I will pay you as a commission two-thirds of $5,000. In case the property is sold on this same trade for a less amount than the amount above mentioned, I will pay you two-thirds of 5 per cent. commission, said commission to be paid as the money is received by me. I reserve the right to withdraw this offer after interviewing your purchaser should I fail to come to an agreement with him. Yours very truly, (Signed) A. L. Frederick."

Plaintiff's petition further alleged that in pursuance thereof he introduced the defendant, Frederick, to the Amerada Petroleum Company, and procured and was the procuring cause of the defendant's sale to the company of a lease covering 95 specifically described acres of the above 175 acres for a bonus of $500 per acre in cash, and $100 per acre in oil, and was entitled to a commission for so doing at the rate of two-thirds of 5 per cent. of the sale price which commission the defendant refused to pay. The defendant answered, denying the allegations generally, and particularly that there was any contract existing between the parties authorizing the plaintiff to sell the lease covering the lands described in his petition.

A jury was waived and the cause was tried to the court. The court, at the request of the parties. made separate findings of fact and conclusions of law. The cause resulted in a judgment in favor of the defendant. Plaintiff's motion for a new trial was overruled, exceptions reserved, and he has duly appealed to this court.

Plaintiff in error assigns numerous errors, all of which are to the effect that the court erred in rendering its judgment against the plaintiff and in favor of the defendant; that the court erred in its findings of fact; and that said findings of fact were not sustained by the evidence and are against the evidence; that the court erred in its findings and conclusions of law in that said conclusions of law as found by the court, are incorrect and erroneous. The trial court found that on the 1st day of August, 1923, and for sometime prior thereto, the defendant, A. L. Frederick, was the owner of certain described real estate; that one D. L. Kiker had, on August 1st, and sometime prior thereto, known that the defendant, Frederick, desired to lease his land for oil and gas for a bonus, and while not having same definitely listed with him, had the matter in mind, and told the plaintiff, Bunnell, or some of his representatives, of said leases; and that a day or so prior to the 1st day of August, 1923 some representative of the plaintiff had called the said Kiker over the phone and advised him that they had a party interested in the leases, and the said Kiker, possibly assuming more than telephone communication justified, took the matter up with the defendant, and induced him to come to Tulsa with a view of making a sale of said leases to plaintiff's purchaser. The evidence further shows, without dispute, that on the 1st day of August, 1923, Kiker and the defendant, Frederick, came to the office of the plaintiff, Bunnell, where, after some conversation, the defendant executed the written letter or contract sued on herein by the plaintiff. It further appears that the execution of this contract

was the first definite listing by defendant of his property with the plaintiff, or with Kiker, and after executing the same, the plaintiff, Bunnell, and Kiker and the defendant, Frederick, went to the offices of the Amerada Petroleum Company, and interviewed Mr. J. M. Lovejoy, the official of said company, who managed and handled matters pertaining to the purchase of oil and gas mining leases for said company. It further appears that Mr. Lovejoy had not, prior to that time, had the matter under consideration, but that the plaintiff's information that said company was interested or would be interested in the leases in question was through some other employe of the company, who was not connected with the purchasing department or authorized to purchase leases. It further appears that the defendant, Frederick, was introduced to Mr. Lovejoy, and the matter of the location and prices of the leases was discussed, and Mr. Lovejoy, the purchasing officer of the Amerada Petroleum Company, stated to plaintiff and defendant that he was not interested in the leases at said price, but further advised them that he would like to or might negotiate with them for a portion of the leases. It clearly appears that the defendant, after being informed by Mr. Lovejoy that he was not interested in the matter and had not considered it, was surprised and disappointed; that he believed from the information conveyed to him by Kiker, who had communicated with a representative of the plaintiff, that the leases had already been sold for the sum of $70,000, and that all that he would be required to do would be to furnish the abstract and receive his money. The evidence shows that he stated to the plaintiff and his associates that he thought and believed Mr. Bunnell's purchaser was ready to take the 175-acre lease and pay the $70,000 over promptly therefor, and that if they were not ready to do so, he did not care to deal with them and would leave the office, which he did. Mr. Lovejoy says in his testimony that he was not consulted and had no further negotiations with the plaintiff after the defendant and plaintiff left his office.

It further appears that on the following day the defendant returned to the office of the plaintiff, Bunnell, and asked for and received the contract that he had signed, and then and there terminated the negotiations between him and the plaintiff.

It further appears from the evidence that, subsequently. on the same day and shortly after the contract was terminated, the defendant, at the instance and request of an-

other lease broker, one C. C. Hayden, who was not connected with the plaintiff company or Mr. Kiker, after interviewing a number of other companies, returned to the office of the Amerada Petroleum Company, and after some negotiations did make a sale of a portion of his leasehold interests to the American Petroleum Company, to wit, 95 acres of his said 175-acre tract for the sum of $38,000 cash bonus and the sum of $100 per acre payable in oil only. Under this state of facts the court concluded, as a matter of law, that the contract entered into on the 1st day of August between the plaintiff and defendant was a valid contract made in contemplation that the plaintiff had a purchaser interested in defendant's leasehold, and that plaintiff not having, prior to that time, a listing of said property and plaintiff's action being based upon said contract, under the terms of the same it was a special listing and the defendant had the right to withdraw said contract at the time he withdrew the same; and further, that under the terms of the contract and the rights reserved to the defendant in thereunder, the action of the defendant in withdrawing or terminating such contract did not constitute bad faith or fraud.

The one question for determination is whether the defendant, Frederick, in exercising his right to terminate the contract, acted in good faith or whether he was attempting to escape the payment of a commission to the plaintiff. The trial court, with all of the witnesses before him, after a review of the facts, concluded as a matter of law that defendant's act in withdrawing or terminating the contract did not constitute fraud. A careful examination of the evidence disclosed by the record leads to the conclusion that the defendant was justified in terminating the contract in question, and that his subsequent sale through another broker of a small part of his acreage to the Amerada Petroleum Company was not made for the purpose of depriving the plaintiff of a commission.

It will be observed that the contract involved presupposes that a trade had already been made, based upon a sale of the lease on the 175 acres, and that if the entire tract was sold by the plaintiff for less than $75,-000, a commission of two-thirds of 5 per cent. would be paid the plaintiff.

The evidence shows that the defendant was induced to go from his home to Tulsa upon the representations made to him by Kiker that a representative of the plaintiff told him over the telephone that he had the 175-acre lease sold for $70,000. The plaintiff's representative, Mr. Stratton, testified

that he communicated with Kiker from the plaintiff's office, and that he told Kiker that he thought "We have it sold on that basis," by which, he stated, was meant 175 acres at $400 per acre. It was under these circumstances that the defendant, accompanied by Kiker, went to Tulsa where they were met at the station by another representative of the plaintiff, Mr. Baker, who took them to the plaintiff's office. The defendant's testimony as to what occurred in plaintiff's office is to the effect that he told Mr. Bunnell positively that he had come there with the expectation of getting his money and turning this lease over and closing the deal, and that if the plaintiff could not turn it at $70,000, the deal was to be considered closed as far as the plaintiff was concerned. He testified that Mr. Bunnell said to him:

"All you have to do is to go over there (meaning the office of the Amerada Petroleum Company) and give them your title and get your money."

The plaintiff testified as follows, with reference to what was said at his office at the time his associates came to his office with the defendant:

"I asked him (defendant) about the commission to be paid on it and he explained his price was $70,000 to Mr. Kiker, with the agreement of payment of 5 per cent. in the event it sold for more than $70,000; that the $70,000 should be cash to him, and then is when I told him I had it up at $75,000, I believe; and then when we agreed on the commission to be paid we agreed that I should have two-thirds of 5 per cent. if we made a sale, and he was to take care of Mr. Kiker, and he was to protect us in the amount of two-thirds of 5 per cent. or two-thirds of $5,000, if we sold it for that. Then we wrote a letter as to the agreement—what the agreement should be."

It seems to be well settled by the authorities that in the absence of an express contract to the contrary, if the employer acts in good faith, not seeking to escape the payment of commissions, but moved fairly by a view of his own interest, he has the absolute right before the bargain is made, while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker's labor. 4 R. C. L. sec. 54, page 316.

"Of course, while he has not contracted to employ a broker for any specified period of time, he not only has the power but 123-8

the right to terminate the agency at any time before it is consummated, without incurring any liability, provided he acts in good faith and not for the purpose of escaping payment of commissions virtually earned." 4 R. C. L. 253, 254.

There is no dispute in the testimony that the defendant, after endeavoring to sell his 175-acre lease elsewhere through the efforts of another broker and after he had terminated plaintiff's employment, as a last resort opened negotiations with Mr. Lovejoy of the Amerada Petroleum Company, which resulted in the sale of 95 acres on different terms, to wit, $400 per acre, all cash, and $100 an acre in oil.

In 9 C. J. 602, sec. 89, it is said:

"If the principal and customer introduced by the broker cannot agree on the terms of the sale and the broker or his customer drops the negotiations or the principal withdraws his authorization, the broker is not entitled to a commission, on a sale being subsequently made by the principal, acting either independently or through another broker to the same customer on different terms."

We conclude that the evidence clearly shows that plaintiff did not become entitled to recover any commission under the explicit terms of the contract sued upon.

We think the judgment should be affirmed.

By the Court: It is so ordered.