BRANIFF v. BUTTRAM et al. (CHANDLER-FRATES CO., Intervener).

No. 33706.   June 20, 1950.

Rehearing Denied July 11, 1950.

Second Petition for Rehearing Denied Oct. 17, 1950.

*203 P. 2d 116.*

T. Austin Gavin, of Tulsa, for plaintiff in error.

Butler & Rinehart, of Oklahoma City, for defendants in error.

JOHNSON, J.   The parties occupied the same positions in the trial court as here, and they will be referred to as they appeared.

Plaintfif alleges that sometime about February or March, 1946, being engaged in the business of buying and selling real estate upon commission as a broker, he was employed by defendants to procure for them a purchaser for a certain building, known as the "Wright Building," Tulsa, Oklahoma, then the property of defendants; that plaintiff did find a purchaser for said building and introduced him to the defendants, and that thereafter the defendants sold the said building to such purchaser for the sum of $400,000; that plaintiff was entitled to the prevailing commission price for such sales, being 5% of the sale price, or $20,000.

Defendants, Frank Buttram and Buttram Petroleum Corporation, filed a pleading designated "Answer and Bill in the Nature of a Bill of Interpleader." But Frank Buttram having shown that he was acting only for Buttram Petroleum Corporation, his demurrer to plaintiff's evidence as failing to establish a cause of action against him personally was sustained.   Therefore, the corporation is now the only real defendant. The answer was a general denial, except admitting that plaintiff was a real estate broker; that during March or April, 1946, it listed the property in question with plaintiff; that on the 27th day of January, 1947, it entered into a written

agreement with W. C. Berry, selling the Wright Building to him for $400,000; admitting further that it had failed to pay a commission in any sum to plaintiff.

Defendant in its bill in the nature of a bill of interpleader alleges that after the original listing with plaintiff in February or March, 1946, plaintiff was advised by defendant via long distance telephone, through its president, Frank Buttram, that if the Wright Building was not sold on the date of said telephone call that the property would be taken off the market; that confirming this, defendant wrote plaintiff the following letter:

"June 11, 1946

"Mr. Phil Braniff
"408 Thompson Building
"Tulsa, Oklahoma

"Dear Phil:

"This will confirm my telephone conversation with you on June 10th, 1946, at which time I stated to you that unless the deal for the sale of the Wright Building was consummated during the day the property would be taken off the market.

"Therefore, I wish to withdraw the property from the market and you will please advise anyone to whom you may have offered the building that the property is definitely off the market.

"Yours very truly,

"(Signed) Frank Buttram
"FB'nc

"cc—Miss Lorene McDonnell, Mgr.
"Wright Building,
"Tulsa, Oklahoma"

Defendant further alleged that at no time during plaintiff's negotiations with W. C. Berry did plaintiff advise defendant that Berry was ready, willing and able to pay $400,000 for said building; that thereafter, on or about the 15th of November, 1946, defendant listed the said building with other real estate agents, including Chandler-Frates Company; that none of the real-tors were given an "exclusive listing" to sell the building.

That thereafter Chandler-Frates advised defendant that it had as a prospect, W. C. Berry. Thereupon, defendant's agent, Frank Buttram, advised Chandler-Frates that it was wasting its time in contacting Berry; that considerable negotiations had previously been had with Berry through plaintiff, and that Berry had only offered $350,000 for the building, which amount was not acceptable or satisfactory to defendant; that, nevertheless, Chandler-Frates insisted on pursuing its contacts with Berry, and thereafter, on the 27th of January, 1947, representatives of Chandler-Frates, J. A. Frates, Jr., and S. E. Savage, presented a contract in writing under the terms of which Berry offered to purchase the building for the sum of $400,000 and attached a down payment or "good faith" check for $5-000.

That before accepting said contract, defendant, through its agent, Frank Buttram, advised Chandler-Frates' representatives that he had been informed that the plaintiff might make some claim for a real estate agent's fee in connection with the sale of the said building. He further advised them that said building had been listed with plaintiff; that plaintiff had also contacted Berry about purchasing said building; that plaintiff had advised defendant that Berry would pay $350,000, which offer defendant considered too low and rejected; that inasmuch as plaintiff was unsuccessful in securing an acceptable offer from Berry, and that during the early part of June, 1946, the building manager of the Wright Building, Miss Lorene McDonnell, advised that the efforts of plaintiff to sell said building, as well as the visits of Berry to the Wright Building and statements made by him during inspections of the building, were causing dissatisfaction among both the building's tenants and employees, that the building should either be sold immediately or taken

off the market; that the building had been taken off the market on June 10, 1946, and had never thereafter been listed for sale with plaintiff, nor was he at any time thereafter ever authorized either to show or sell said building for defendant; that defendant would not sell said building unless it was assured that it would not become liable for two real estate commissions.

That upon being so advised both the said Mr. Frates and Mr. Savage stated to defendant's said agent that if defendant would execute said sale contract, the Chandler-Frates Company would protect defendant against any claim of plaintiff up to the amount of the commission otherwise due Chandler-Frates, and which is the same amount sought by plaintiff in this action, that is, 5% of the sales price of said building, or the sum of $20,000. That the said J. A. Frates, Jr., and S. E. Savage, acting for and on behalf of Chandler-Frates, thereupon gave defendant a letter confirming said agreement; that said agreement was duly accepted by defendant, and relying thereon, defendant then executed said contract of sale.

That inasmuch as this action was brought against it by plaintiff, that defendant has refused to pay the said commission to Chandler-Frates and retains the same in its possession; that Chandler-Frates has made claim against defendant for said commission and defendant is advised that said Company either has, or will, file an application for leave to intervene herein. That because of the circumstances outlined above, defendant believes it owes said commission to Chandler-Frates, and prays that the court determine to which of said parties defendant is indebted for the real estate commission, and that upon payment thereof, in accordance with such determination by the court, defendant be discharged of any further claim whatsoever by either plaintiff, or by Chandler-Frates for said commission; that defendant is ready, willing

and able to pay said commission upon its being determined as to which claimant is entitled thereto.

That for the above stated reasons, in the event Chandler-Frates intervenes herein, the same should be granted in order that a full and complete determination of this controversy may be had.

Plaintiff duly filed an answer and motion to strike the bill in the nature of an interpleader. The motion to strike being overruled, plaintiff filed a demurrer to same, which was also overruled. Thereafter, Chandler-Frates Company was permitted over the objection of plaintiff to file a plea in intervention in which they asserted that the property in question had been listed with them on or about the 20th day of November, 1946; alleging substantially the factual situation as in defendant's bill in the nature of a bill of interpleader. Upon the issues thus joined the cause was tried to a jury.

After the adduction of the evidence of parties plaintiff and defendant, defendant moved for a directed verdict, which was sustained. A motion for new trial was overruled, resulting in this appeal.

As grounds for reversal plaintiff argues two propositions: (1) "The court erred in permitting Chandler-Frates Company to intervene" and (2) "The court erred: (a) in sustaining a motion for a directed verdict; (b) in overruling plaintiff's motion for a new trial."

The defendant offers two counter propositions: (1) "Whether the court erred in permitting the Chandler-Frates Company to intervene is inconsequential," and (2) "The court did not err: (a) In sustaining motion for a directed verdict; or (b) in overruling plaintiff's motion for a new trial."

We are of the opinion that plaintiff's first proposition is well taken. Local Federal Savings & Loan Ass'n v. Stokes,

194 Okla. 677, 155 P. 2d 975; Local Federal Savings & Loan Ass'n v. Carlock, 194 Okla. 199, 148 P. 2d 466; 12 O. S. A. §238. While it is true, as suggested by defendant, the question of permitting Chandler-Frates to intervene may be academic and inconsequential in so far as this appeal is concerned, inasmuch as after allowing said company to intervene, the court apparently for the purpose of retaining jurisdiction as between Buttram and Chandler-Frates ruled that the issues between plaintiff and defendant would be tried separately to a jury, and the issues between defendant Buttram and Chandler-Frates would be thereafter tried by the court, sitting as a court of equity. The defendant was protected by the "Agreement to Save Defendant Harmless." Obviously, there is no basis for a bill of interpleader or plea of intervention, as the claims of plaintiff and intervener were based upon separate and unrelated contracts, neither claiming through the contract of the other.

In considering plaintiff's Proposition II, as to subdivision (a), we must apply the universally accepted rule that a motion to direct a verdict admits all of the facts and inferences to be drawn therefrom in favor of the party against whom the motion is directed, and leaves for consideration only such evidence as is favorable to the party against whom such motion is directed. Simpson v. White, 195 Okla. 375, 157 P. 2d 913.

The evidence is undisputed that plaintiff was employed by the defendant to procure a purchaser for the Wright Building; that plaintiff contacted W. C. Berry relative to purchasing said building; that negotiations between plaintiff and Berry extended over considerable length of time; that plaintiff and Berry thoroughly inspected the building and had numerous conferences between themselves and the manager of the building relative to rental income, taxes and upkeep of said building; that in a final conference in Tulsa on June 10, 1946, between plaintiff, Myron Buttram, representative of defendant, Miss McDonnell, defendant's office manager of said building, and Berry, there were offers and counteroffers made. It is admitted by defendant that at this meeting it offered to accept $450,000 for said building, and that its representative was authorized to accept a bid of $400,000. It is further admitted that the authority of the representative of defendant to accept a $400,000 offer was never revealed during this conference.

Plaintiff contends, and so testified, that prior to June 10, 1946, he was authorized by Berry to submit, and did submit orally, an offer of $400,000 to Frank Buttram, agent of defendant; that on June 10, 1946, he offered a $400,000 bid to Myron Buttram, representative of defendant, which was not accepted. Myron and Frank Buttram each denied that any offer of $400,000 was made to them. Berry testified that he had made such offer to plaintiff, and that at the time, which was prior to date of the conference of June 10, 1946, he had signed some forms for plaintiff and given plaintiff a check for $10,000 as good faith of his $400,000 offer.

It is admitted that defendant called plaintiff by long distance telephone as alleged, and the letter heretofore set out in full was received by plaintiff, but plaintiff denied that he ever abandoned his efforts to sell said property, or that the action of defendant constituted a valid withdrawal. It is also admitted that the building was sold to Berry as alleged.

While we have stated the evidence in mere outline only, clearly the evidence was in conflict as to the issues, thereby presenting questions of fact for the jury. Artlin Realty Co. v. Glass, 170 Okla. 588, 41 P. 2d 471.; Cales v. Pattison, 189 Okla. 160, 114 P. 2d 457; Smith v. Anderson, 2 Idaho 537, 21 P. 412; Warren v. Van Der Velde, 193 Mich. 164, 159 N. W. 137; Hommick v. New York Dock Trade Facilities Corp., 285 N. Y. S. 17. The defendant assert-

ed in its letter of revocation that the property was definitely off the market, and gave no reason other than the statement of Miss McDonnell that it should be sold immediately or taken off the market because of the unrest that Berry was causing among the tenants and employees, yet proceeded to sell the building through other brokers to Berry, the very same person the plaintiff claims he had procured as a purchaser, for $400,000, the amount plaintiff claimed he had offered defendant. The jury under these circumstances might have believed the testimony of plaintiff or at least inferred from the testimony that the object of the letter of revocation was an attempt to deprive the plaintiff of his commission.

The court in sustaining defendant's motion for directed verdict based his ruling on the case of Bunnell v. Frederick, 123 Okla. 222, 253 P. 56. Both plaintiff and defendant cite and rely upon it in their discussion of the issues. Defendant in its brief cites paragraph three of the syllabus which reads:

"If the principal and customer introduced by the broker cannot agree on the terms of the sale, and the broker or his customer drops the negotiations or the principal withdraws his authorization, the broker is not entitled to a commission, on a sale being subsequently made by the principal, acting either independently or through another broker, to the *same customer on different terms,* where the principal acts in good faith and not for the purpose of depriving the broker of his commission." (Emphasis ours.)

This court, in Cales v. Pattison, supra, said:

" . . . Defendant alleges that he discharged the plaintiff, if he were ever hired, and cites in support of such right Bunnell v. Frederick, 123 Okla. 222, 253 P. 56. This fact was disputed. A similar situation is discussed in Artlin Realty Co. v. Glass, supra, which distinguishes Bunnell v. Frederick, supra, and in Wagnon v. Shoptaw, supra, it is stated: 'The principal cannot discharge the broker pending negotiations by the latter with a prospective customer, in order to effect a sale to the latter himself without being liable to the agent for the commission.' "

"It is claimed that the defendant alone concluded the sale separate and apart from the efforts of the plaintiff. A condition similar to the one at bar was presented in Petroleum Pipe Line Co. v. Lundy, supra, in which it was urged that oil was sold in good faith under arrangements later made by the principal with the purchaser and this court stated that the evidence as to whether the agent was the procuring cause was in substantial conflict and presented a jury question."

We think there is another feature in the case at bar which distinguishes it from the Bunnell case, i. e., this property, if plaintiff is believed, was sold to the *same customer* on the "same terms" and for this reason, although not exactly in point, the case reasonably sustains the contention of the plaintiff.

In view of what has been said, further discussion is unnecessary. The cause is reversed, with directions to the trial court to sustain plaintiff's objections to the plea of intervention and grant a new trial.

CORN, GIBSON, LUTTRELL, HALLEY, and O'NEAL, JJ., concur.