F. G. OFFUTT, d/b/a F. G. Offutt Company, and A. J. Reynolds, Plaintiffs in Error,

v.

Harold F. PHILLIS, d/b/a Phillis Construction Company, Defendant in Error.

No. 36644.

Supreme Court of Oklahoma.

June 21, 1955.

Charles W. Harrison and T. M. Hagee, Oklahoma City, for plaintiffs in error.

Fred M. Black and Claude Burns, Oklahoma City, for defendant in error.

HALLEY, Justice.

F. G. Offutt, doing business as F. G. Offutt Company and A. J. Reynolds sued Harold F. Phillis, doing business as Phillis Construction Company, to recover a commission claimed to be due upon the sale of certain real estate. The parties appear here as in the court below and will be referred to as plaintiffs and defendant.

Plaintiffs alleged that on April 29, 1953, they entered into a written contract with defendant whereby they were given the exclusive right for a period of thirty days to sell a house and lot in Oklahoma City and known as No. 2 Evans Drive, for the sum of $47,500, for a commission of three per cent of the sale price.

Plaintiffs further alleged that they advertised the property extensively in an effort to make a sale, but received only a limited response to their efforts. That defendant then agreed to accept an exchange on the property and plaintiffs advertised on that basis. Their exclusive right to sell was extended from time to time and on June 12, 1953, plaintiffs secured a written offer of exchange in writing from Raymond E. Poe and a deposit of $1,000 earnest money.

They also alleged that on June 12, 1953, they submitted the above exchange offer to the defendant who declined it and advised plaintiffs that he had decided not to accept an exchange and a few hours later advised plaintiffs that he did not care to deal with Mr. Poe and that they were not to attempt to conclude a deal with him, and that the defendant wished to terminate his contract with plaintiffs.

It is also alleged that the defendant continued negotiations with Mr. Poe and shortly thereafter concluded the sale of the property to him who was furnished as a prospective purchaser by the plaintiffs, who were the procuring cause of the sale made by the defendant and that the plaintiffs' efforts were the foundation upon which the sale was based and prayed for judgment for the agreed commission of three per cent, or $1,425.

On motion plaintiffs were required to attach or set out the alleged written offer of Raymond E. Poe to exchange certain property as part of the consideration for defendant's property. It appears that Mr. Poe offered a residence owned by him and $26,000 in cash for defendant's property, but after defendant declined to proceed with this exchange offer the written offer of exchange was returned to Mr. Poe along with his earnest money check and destroyed by the plaintiff, Offutt.

Defendant answered by general denial, a denial of the exchange offer by Mr. Poe and denied that any exchange offer, on terms satisfactory to him, was ever presented to him.

A jury was waived and the evidence was heard by the court. Judgment was rendered for the defendant and plaintiffs have appealed.

Plaintiffs base their argument upon two propositions as follows:

1. Plaintiffs in error were the procuring cause of sale.

2. Plaintiffs had an exclusive agency and did not necessarily have to be the procuring cause.

On April 29, 1953, the defendant and plaintiffs signed the following agreement:

"April 29, 1953

"Phillis Construction Company hereby gives A. J. Reynolds and Felix Offut, Partner Realtors, exclusive listing of 2 Evans Drive for a period of thirty (30) days from this date. Sales price to be $47,500 with a Real Estate Commission of 3% of Sales Price.

"Phillis Construction Co.

(Harold F. Phillis)
3136 NE. 36     Owner

(A. J. Reynolds)
Ja 5–2087     304 W 24

(F. G. Offutt)
Ja 8–2612"

It will be noted that the above written contract gives to plaintiffs the exclusive right to sell defendant's property for a period of thirty days from the date of the contract. This period expired May 29, 1953.

In their amendment to their amended petition, plaintiffs alleged that on or about May 29, 1953, the defendant orally informed plaintiffs that " * * * he would accept a trade-in on his property if a suitable deal was presented to him and authorized advertising on that basis * * *", and that thereby their exclusive contract as modified was extended by mutual assent of both parties for an indefinite period, and that on June 12, 1953, while the contract was in full force and effect, plaintiffs secured a written offer of exchange on defendant's property from Raymond E. Poe, who agreed to convey his property to defendant, plus $26,000 in cash in exchange for the property of defendant, and that Mr. Poe made an earnest money deposit of $1,000 on his written offer of exchange, and that such exchange could and would have been made but for the arbitrary acts of defendant.

Plaintiffs alleged that on June 12, 1953, they submitted the offer of Mr. Poe to the defendant who declined to accept it and informed the plaintiffs that he had decided not to accept an exchange and a few hours later advised plaintiffs that he did not care to deal with Mr. Poe and that plaintiffs were not to attempt to close a deal with him and that he wished to terminate his contract with the plaintiffs.

The above allegations by plaintiffs are important in connection with the answer of defendant where he denies that " * * * any offer of exchange was ever presented to him on terms satisfactory to defendant * * *".

It is not disputed that defendant renewed negotiations with Mr. Poe and wife on June 23, 1953, after he severed his relations with plaintiffs and that Mr. Poe purchased defendant's property. There is shown a copy of the written contract between the defendant and Mr. Poe dated June 23, 1953, whereby defendant agreed to sell Mr. Poe his property for $47,500, $19,000 of which was to be paid in cash at the time of closing the sale, or an allowance of $19,000 was to be made for property located at 2637 N.W. 27, Oklahoma City, being the same property offered as a trade-in when plaintiffs were negotiating a trade-in deal. The purchaser was to secure a loan for $28,500 to apply on purchase price. The facts disclose that Mr. Poe sold his property and paid defendant all cash.

No findings of fact or conclusions of law were requested or made. The court simply found that the allegations of plaintiffs' petition were not supported by the evidence and rendered judgment for the defendant.

We must conclude after reading the record that the court found that plaintiffs were not the procuring cause of the sale of defendant's property because of the testimony showing that plaintiffs abandoned negotiations after defendant refused to accept the property of Mr. Poe as a trade-in at

the price Mr. Poe was willing to accept for his property. Did the defendant have the right to reject the proposition made by plaintiffs for defendant to accept the Poe property at the price fixed thereon by Mr. Poe and the plaintiffs?

There is no question but that plaintiffs were first to contact Mr. Poe and interest him in defendant's property. It is not disputed that they spent a considerable amount in advertising and showed the property on several occasions to prospective purchasers. It is equally clear that they never found a purchaser for cash or a purchaser with a trade-in satisfactory to defendant. Any trade-in deal had to be satisfactory to the defendant. He was perfectly free to accept or reject an offer which included the property of the purchaser as part of the consideration.

The plaintiffs cite numerous cases in which the general rule is announced as to when a broker should be held to be the "procuring cause" of a sale and entitled to a commission. In De Bolt v. Pointer, 204 Okl. 167, 228 P.2d 182, 183, it is clearly announced in the first paragraph of the syllabus as follows:

"A broker will be regarded as the procuring cause of a sale if his efforts are the foundation upon which the negotiations resulting in a sale are begun."

In the case last cited it is also held that the question of whether a broker is the procuring cause of a sale is generally a question for the jury. If a jury is waived it follows that it is a question for the trial judge. The rule announced above is applicable where it is not shown that the contract or listing of property for sale is not abandoned by either or both parties having the right to abandon.

The plaintiffs rely upon Artlin Realty Co. v. Glass, 170 Okl. 588, 41 P.2d 471, 472, as a case parallel to the case before us. In the Artlin case, it was contended by the defendant that his authority to the broker had been withdrawn. The court there said in part:

"* * * The evidence as to whether the authority in the present case was withdrawn was in conflict, and the finding of the jury is against the contention of the defendant. * * *"

In the case at bar, the court must have found that the authority to sell had been withdrawn in finding for the defendant.

In the Artlin case the Court calls attention to Bunnell v. Frederick, 123 Okl. 222, 253 P. 56, for the reason that in the Bunnell case the authority of the agent had been withdrawn prior to the sale, and in the case before us the plaintiffs had notified the defendant that "* * * they had quit as of then", when the defendant advised Mr. Offutt that he, Phillis, was unwilling to accept the offer of Mr. Poe to take in his property at $21,500.

In Bunnell v. Frederick, supra, the Court announced the well established rule to be followed on appeal from a judgment in a law action where a jury is waived and the issues of both law and fact are submitted to the court, as in the case under consideration. There it was said in the second paragraph of the syllabus:

"When a jury is waived, and the issues, both of law and fact, are submitted to the trial court, its findings will not be disturbed by this court if there is any evidence reasonably tending to support the same."

It is also said in the third paragraph of the syllabus:

"If the principal and customer introduced by the broker cannot agree on the terms of the sale, and the broker or his customer drops the negotiations or the principal withdraws his authorization, the broker is not entitled to a commission, on a sale being subsequently made by the principal, acting either independently or through another broker, to the same customer on different terms, where the principal acts in good faith and not for the purpose of depriving the broker of his commission."

In 12 C.J.S., Brokers, § 86, p. 197, it is said:

"The general rule under consideration does not apply and the broker is

not entitled to a commission on a transaction consummated by the principal where the contract of employment requires the broker to render a specific service to earn a commission and he has not rendered that service; his right to a commission depends on a condition which has not been waived or fulfilled, such as a sale at a certain price; or where, by reason of the abandonment or failure of his negotiations, or otherwise, he is not the procuring cause of the transaction, * * *."

In De Bolt v. Pointer, supra, the Court said in the body of the opinion:

"* * * where a broker in such case attempts to sell or lease a building to a prospective customer and fails to complete the transaction and abandons such customer, and thereafter the owner, through his own or his agent's efforts, himself sells or leases the building to the prospective customer, no commission would be due the broker."

The deposition of Mr. Poe was taken at plaintiffs' request but introduced by the defendant. In testifying as to his written agreement with Mr. Offutt relative to purchasing defendant's property, he testified as follows (making reference to Mr. Offutt):

"Q. State whether or not you and Mr. Offutt ever arrived at or entered into a written offer, sale or trade of your property for this property? Is the question clear? A. Yes, it is clear. Yes, we had arrived at a trade, he and I did. He took a contract to that effect.

"Q. Were you at that time interested in making a trade or exchange of this property for your former home? A. Yes.

"Q. Was this agreement in writing or was it verbal? A. It was a written agreement.

"Q. Do you know where the agreement is now? A. He tore it up.

"Q. State whether or not you advanced any money or check as a binder on that deal? A. I gave him a check.

"Q. Do you recall how much it was for? A. A thousand dollars.

"Q. Do you have that check? A. No, he tore it up.

"Q. Now, you say he tore it up? A. Yes, sir.

"Q. Do you know that he tore it up? Was it torn up in your presence? A. Yes, sir; that is right, the contract and the check both. He said they were no good and so he just tore them up and threw them in my waste basket in my office.

"Q. We will come back to that a little later. A. Okey.

"Q. Well, we might do it now. Do you recall under what circumstances those two instruments were torn up in your office? A. He stated that his time had expired, his contract had expired with the owner of the property and that he couldn't go ahead with the deal, because his time had expired. That was my understanding."

Mr. Phillis, the defendant, testified in part as follows:

"A. After I declined to accept the contract, I asked Mr. Offutt if he was willing to continue and he said they had quit as of then."

Only Mr. Poe was a party to the contract with plaintiffs. Mrs. Poe was not a party to that nor to the later contract with the defendant which led to his purchase of the defendant's property. Relative to the contract with plaintiffs, Mr. Poe said further:

"A. When he took the contract, he said he would go and discuss it and come back to see me, and he didn't show up when he said he would, and so I waited two or three days and my wife being interested more than I was, because I really didn't give a whoop. And so I called him, I called Mr. Offutt, and he says, 'Well, our deal is off. I can't make any deal with you.' I believe that was on Friday or Saturday and he says, 'Monday, I will come by and give you your check and the contract back.'"

The plaintiff also testified relative to his proposed trade with Mr. Poe as follows:

"A. (Continuing) And he asked me what kind of a deal I thought we could make and I told him that I thought we might be able to trade for twenty thousand—I mean for $27,500 the difference.

"Q. Between the two houses? A. Yes. That seemed to be agreeable to him.

"Q. Did he authorize you to sell it on that basis? A. Yes, sir."

We think there is no doubt but that the plaintiffs interested the Poes in defendant's property and would have been the procuring cause of their purchase but for the fact that they failed to secure an offer that was satisfactory to the defendant, and the further fact that plaintiffs appear to have completely abandoned the matter when defendant decided that he did not care to continue the negotiations with Mr. Poe. When defendant extended the original thirty-day exclusive agency of plaintiffs it is not claimed that such extension was ever made definite as to time and the defendant had the right to end the extension at any time, provided he did not do so to avoid payment of a commission.

It appears that the defendant had the Poe property appraised and it was valued at $18,500. Defendant indicated that he would go as high as $20,000 on the value of the Poe property as a trade-in. The contract of plaintiffs with Mr. Poe placed a trade-in value on the Poe property of $21,500. It is argued that $1,500 is a very insignificant sum in a deal of $47,500. It does appear small but it is certainly such to justify the defendant in declining the offer if not satisfactory to him.

When defendant decided that the Poe exchange was not satisfactory and so advised the plaintiffs, Mr. Offutt returned to Mr. Poe both the contract and earnest money check and they were destroyed in the presence of both of them. Mr. Offutt advised Mr. Poe at the time that the deal with him was off. This was after Mr. Offutt had talked again to Mr. Phillis over the telephone.

Mr. Phillis had the right to accept or reject any proposed exchange offer just as he had a clear right to end the employment of plaintiffs any time after the expiration of the first thirty days and the contract was extended for no definite time. We think this meant that the contract was extended at the will of the defendant who could end it at any time he desired, and that it also gave the plaintiffs the same right.

There is evidence amply competent to support a finding that the contract between plaintiffs and defendant had been abandoned by both parties before defendant entered into a contract with Mr. Poe on June 23, 1953, which resulted in a completed transaction. There is no evidence that the defendant rejected the original offer of Mr. Poe for the purpose of evading the payment of a commission or that he acted unfairly or fraudulently.

As to the contention of plaintiffs that they had an exclusive agency and it was not necessary that they be the procuring cause of the sale, we only need to point out that this could not be true after the contract between the parties was abandoned by both parties. When the plaintiff, Offutt, returned to Mr. Poe his written offer and earnest money check and tore them up in the presence of Mr. Poe and informed him that the deal was off, the agency of the plaintiffs ended.

It appears that the property of defendant was placed in the hands of another broker who put out a sign that the property was still for sale and that Mrs. Poe, having seen this sign, contacted the defendant and new negotiations between the defendant and the Poes began which resulted in a completed sale of defendant's property.

Since there is competent testimony to support the findings of the trial judge, his findings and judgment are hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN and JACKSON, JJ., concur.

BLACKBIRD, J., dissents.